[Crim. No. 17942. In Bank. May 9, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES C. WINGO, Defendant and Appellant.

172

**COUNSEL**

Richard S. Buckley, Public Defender, and Charles A. Gessler, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Russell Iungerich and Cynthia S. Waldman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

MOSK, J.—Defendant was charged in count I with murder (Pen. Code, § 187) and in count II with assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). The case was submitted to the trial court on the transcript of the preliminary hearing. Defendant was acquitted on the murder count, but was found guilty of the assault and sentenced to prison for the term prescribed by law. He appeals from the judgment, contending that the punishment imposed is cruel or unusual in violation of article I, section 17, of the California Constitution,[1] and the Eighth and Fourteenth Amendments to the United States

---

[1]Article I, section 17 (former art. I, § 6) provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

Constitution.[2] For the reasons stated we conclude the judgment must be affirmed.

I

The facts are essentially undisputed. The assault was perpetrated upon one William Love, an "aged and thin" man, 72 years old, who walked with a cane. It occurred in a park, during daylight hours, and consisted of repeated kicks to the victim's head and upper body after defendant had first knocked the victim to the ground. A bystander intervened and terminated the beating, and defendant was thereafter arrested by an officer who happened upon the scene. While being transported to the police station defendant was heard to scream, "Yes, I kicked his ass, and I don't think I kicked it well enough."

Love died in a Los Angeles hospital nine days later. The cause of death was a heart attack. The injuries sustained in the assault included facial bruises and lacerations and a fracture of the left thigh bone. Medical testimony was unable to declare with certainty whether there was a causal relationship between such injuries and the heart attack.

Penal Code section 245, subdivision (a) (hereinafter section 245(a)), provides inter alia: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for six months to life, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment. . . ."[3] As noted, defendant was sentenced to state prison "for the term prescribed by law." His sole contention is that the punishment is disproportionate to his offense and thus is unconstitutionally cruel or unusual.

---

[2]Because of the disposition herein we find it unnecessary to reach the merits of defendant's federal constitutional claim.

[3]The section was first enacted in 1872 and has undergone frequent amendment. In its original form the offense required specific intent and the use of a deadly weapon, with a penalty of not more than two years and/or a fine of not more than $5,000. An 1873-1874 amendment deleted the intent provision and added the phrase, "or by any means of force likely to produce great bodily injury." An alternative penalty of imprisonment in county jail was also provided. A 1921 amendment increased the maximum period of imprisonment to 10 years. In 1961 subdivision (b) was added relating to assaults on police officers, and in 1965 the penalty for a second offense under subdivision (b) was increased to five years to life. Finally in 1970 the present alternative felony penalty of six months to life was made applicable to first offenses under both subdivisions (a) and (b).

At the outset we note that the felony penalty provisions of section 245(a) are part of the indeterminate sentence law. (Pen. Code, §§ 1168, 3020-3025.) Under this system the trial court "does not specify the length of imprisonment but simply sentences the defendant for the term 'prescribed by law.' (Pen. Code, § 1168.) It is the Adult Authority, an administrative agency within the Department of Corrections (Pen. Code, §§ 5001, 5075-5082), which thereafter determines within statutory limits the length of the term the defendant will actually be required to serve. (Pen. Code, §§ 3020-3025.)" (*In re Lynch* (1972) 8 Cal.3d 410, 415 [105 Cal.Rptr. 217, 503 P.2d 921].) Thus in the case of a conviction under section 245(a) the Adult Authority may fix the term of confinement at any point between the statutory minimum of six months and the maximum of life.

As another preliminary matter we observe that the statute under discussion proscribes two distinct categories of offenses: (1) assault with a deadly weapon, and (2) assault by means of force likely to produce great bodily harm. As will be seen, within these categories is included an extremely broad spectrum of culpable behavior, a fact of which the Legislature was undoubtedly cognizant in enacting the equally wide range of penalties for violation of the section.

Finally we pause to emphasize the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual.[4] The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. ■ Perhaps foremost among these are the definition of crime and the determination of punishment. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 181 [217 P.2d 1].) While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be questioned "unless their unconstitutionality clearly, positively, and unmistakably appears." (*In re Lynch* (1972) *supra,* 8 Cal.3d at p. 415, quoting from *In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].) With these fundamental considerations in mind we proceed to the merits of defendant's case.

[4]See *People* v. *Morgan* (1973) 36 Cal.App.3d 444, 447-450 [111 Cal.Rptr. 548] (armed robbery), *In re Jones* (1973) 35 Cal.App.3d 531, 533-542 [110 Cal.Rptr. 765] (sale of marijuana), *People* v. *Brown* (1973) 35 Cal.App.3d 317, 325-328 [110 Cal.Rptr. 854] (unlawful sexual intercourse), and *In re Maston* (1973) 33 Cal.App.3d 559, 561-566 [109 Cal.Rptr. 164] (kidnap-robbery with bodily harm), all of which upheld the challenged penalty against the contention that it was cruel or unusual under *Lynch.*

## II

Defendant relies on our holding in *Lynch* to support his contention that the penalty provisions of section 245(a) are cruel or unusual. In *Lynch* we struck down the provision of Penal Code section 314 which punished second-offense indecent exposure by imprisonment "for not less than one year." ▋ In assessing the validity of the potential life-maximum term in that case we employed a three-part analysis: (1) "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society" (*id* at p. 425); (2) a comparison of "the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious" (*id* at p. 426); and (3) "a comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision." (*Id* at p. 427.) ▋ ▋ We concluded that the disproportion between the crime of second-offense indecent exposure and the penalty of potential life imprisonment was so great as to shock the conscience, and accordingly declared void the recidivist provision of section 314.[5]

In *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], we were compelled by the *Lynch* analysis to invalidate the penalty provisions of Health and Safety Code section 11352 (formerly § 11501). These provisions precluded parole consideration for certain narcotics recidivists for 10 years in the case of a second offender, and 15 years for a third offender. We determined that such a penalty, imposed "without regard to the existence of such possible mitigating circumstances as the addict status of the offender, the quantity of narcotics involved, the nature of the purchaser, or the purposes of the sale, is in violation of [former] article I, section 6 of the California Constitution." (*Id* at p. 929.)[6]

Similarly, defendant here asserts that the penalty provisions of section 245(a) cannot withstand application of the *Lynch* criteria. Before

---

[5]*Lynch* was the first case in which we recognized that "a punishment may violate [former] article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (Fn. omitted.) (8 Cal.3d at p. 424.) Of course a cruel or unusual *method* of punishment will provide a separate ground for holding a penalty unconstitutional. (See *Weems* v. *United States* (1910) 217 U.S. 349, 377 [54 L.Ed. 793, 802-803, 30 S.Ct. 544].)

[6]*Foss* did not consider the constitutionality of either the maximum or minimum penalty, but only of the period during which parole was precluded.

proceeding to that analysis, however, we must point out a fundamental distinction between *Lynch* and the case at bar. There we were concerned with whether the maximum term of life imprisonment was ever permissible for the crime of second-offense indecent exposure. The statute proscribed a single mode of behavior, and we held that under no circumstances could that behavior justify a potential life maximum. By contrast, in the instant case we are called upon to determine the constitutionality of a statute which prohibits a wide range of culpable conduct, with a correspondingly wide range of punishment. Thus, unlike *Lynch*, we are here concerned with a maximum penalty which might be permissible in some circumstances but excessive in others.

## A

We begin with the first *Lynch* test. The offenses proscribed by section 245(a) are serious, frequently committed with great violence and resulting in painful, sometimes permanent, injury to the victim. (See, e.g., *In re Downs* (1970) 3 Cal.3d 694 [91 Cal.Rptr. 612, 478 P.2d 44]; *People* v. *Martinez* (1973) 31 Cal.App.3d 355 [107 Cal.Rptr. 284]; *People* v. *Lovely* (1971) 16 Cal.App.3d 196 [93 Cal.Rptr. 805].) If our focus were confined to this type of behavior there could be no question but that the degree of danger to society was sufficiently high to justify imposition of a severe sentence. But the breadth of the challenged statute encompasses considerably more than this narrow range of offenses. At one end of the spectrum there is conduct virtually indistinguishable from premeditated murder, while at the other there is a mere attempt to seriously injure which lacks any specific intent and is completely futile.

An example may serve to illustrate this disparity. A defendant, heavily intoxicated, is present when a fight breaks out in a barroom. In the excitement of the fray he strikes out at an intended victim with his fists, but because of his impaired faculties completely misses his target.[7] The use of hands or fists alone has been held sufficient to support a conviction of assault by means of force likely to produce great bodily injury. (*People* v. *Chavez* (1968) 268 Cal.App.2d 381, 384 [73 Cal.Rptr. 865]; *People* v. *White* (1961) 195 Cal.App.2d 389 [15 Cal.Rptr. 665].) Moreover, since the statute focuses on force *likely* to produce harm, it is immaterial that the force actually resulted in no harm whatever. (Cf. *People* v. *Wells* (1971) 14 Cal.App.3d 348, 358 [92 Cal.Rptr. 191]; *People* v. *Samuels* (1967) 250

---

[7]Of course if the defendant were so intoxicated that he lacked the present ability to "commit a violent injury," there could be no assault and a fortiori no aggravated assault. (Pen. Code, § 240.)

Cal.App.2d 501, 513 [58 Cal.Rptr. 439].) And since the offense is a general intent crime, the defendant's intoxication could not be considered a mitigating factor, nor, of course, could it be a defense. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 896-897 [92 Cal.Rptr. 172, 479 P.2d 372]; *People* v. *Hood* (1969) 1 Cal.3d 444, 452-459 [82 Cal.Rptr. 618, 462 P.2d 370].)[8]

Thus a single errant swing by an intoxicated defendant could, under the language of the statute, result in conviction of an offense carrying a potential life maximum. It is true that no such case has been brought to our attention, but the possibility nonetheless remains.[9] Accordingly, in examining the degree of danger presented to society through violation of section 245(a) we must be mindful of the entire range of such inclusive conduct.

In the instant case, of course, we are faced with circumstances entirely at variance with the foregoing hypothetical. Here a particularly vicious attack took place, on a relatively helpless victim, resulting in substantial injury. There was no evidence of intoxication, and no indication of lack of specific intent. Yet this simply serves to emphasize the wide variety of behavior included under the umbrella of section 245(a). We thus conclude that any determination of the danger to society created by violations of section 245(a) must in all instances turn on the peculiar facts of the individual case.

---

[8]Pursuing the hypothetical example further, it is ironic to note that if the defendant had actually succeeded in killing the victim his diminished capacity would preclude a conviction of murder or of assault with intent to commit murder (Pen. Code, § 217 [1 to 14 years]), and the proper judgment would be a conviction of the crime of manslaughter. (Pen. Code, § 193 [imprisonment not exceeding 15 years].)

[9]There have been cases closely approaching the lesser end of the scale of conduct under section 245(a). In *People* v. *Lopez* (1969) 271 Cal.App.2d 754 [77 Cal.Rptr. 59], the defendant was arrested for possession of marijuana and in attempting to escape swung a belt coin-changer at the officers, missing his target. A conviction under subdivision (b) of section 245 was sustained. (See also *People* v. *Samuels* (1967) *supra,* 250 Cal.App.2d 501, 513 [section 245(a) conviction based on beating administered to willing victim in sadomasochistic film; defendant claimed the apparent injuries were cosmetically induced, but judgment was affirmed because "An aggravated assault, like any other assault, may be committed without the infliction of any physical injury"]; *People* v. *White* (1961) 195 Cal.App.2d 389 [15 Cal.Rptr. 665] [single punch in the eye]; *People* v. *Mitchell* (1940) 40 Cal.App.2d 204 [104 P.2d 545] [defendant reached over heads of two or three people and hit victim, who had been original aggressor, with beer bottle]; *People* v. *Pullins* (1950) 95 Cal.App.2d 902 [214 P.2d 436] [defendant "chewed" finger of victim causing it to become "bent"]; *People* v. *Score* (1941) 48 Cal.App.2d 495 [120 P.2d 62] [defendant struck victim with fist, then accidentally fell on him, breaking his leg]; *People* v. *Hahn* (1956) 147 Cal.App.2d 308 [305 P.2d 192] [victim hit on head four times with empty beer can].)

## B

The second *Lynch* test requires a comparison of the challenged offense with those which must be deemed more serious. If after this examination there "are found more serious crimes punished less severely than the offense in question, the challenged penalty is to that extent suspect." (8 Cal.3d at p. 426.)

Here again, however, there appears a difficulty in classification. Because of the wide range of conduct proscribed by section 245(a), a given instance of that offense may involve the most brutal type of violent behavior equal to any interdicted by the Penal Code. If such a case were used as a benchmark a court would be hard pressed to find another offense that could be deemed "more serious." But here we are on firmer ground than in the determination of the degree of danger of the conduct proscribed by section 245(a), since there are a considerable number of crimes in which either specific intent or demonstrable injury is a necessary ingredient.

Using this as our point of comparison we find many "more serious" crimes for which a lesser penalty is prescribed. Thus the punishment for manslaughter (§ 193) is up to 15 years; for assault with intent to commit murder (§ 217), 1 to 14 years; for kidnaping (§ 208), 1 to 25 years; for mayhem (§ 204), up to 14 years; for assault with intent to commit rape, sodomy, mayhem, or robbery (§ 220), 1 to 20 years; for assault with caustic chemicals with intent to injure or disfigure (§ 244), 1 to 14 years; for battery on a peace officer or fireman engaged in the performance of his duties (§ 243), 1 to 10 years; for burglary by torch or explosives (§ 464), 10 to 40 years; for wrecking a vehicle of a common carrier with intent to cause bodily harm (§ 219.1), 1 to 14 years; for shooting at an inhabited dwelling (§ 246), 1 to 5 years; for poisoning food or drink with the intent to injure a human being (§ 347), 1 to 10 years; for drunk driving causing bodily injury (Veh. Code, § 23101), up to 5 years; for forcible abduction for purposes of prostitution (§ 266a), up to 5 years; for wilful cruelty to a child likely to produce great bodily harm or death (§ 273a), 1 to 10 years; for wilful wife or child beating resulting in a traumatic condition (§ 273d), up to 10 years.

The foregoing list is illustrative rather than exhaustive. Yet it is evident that the offenses described demand considerably more culpability than many of those embraced by section 245(a). This does not per se compel a conclusion that the challenged statute is unconstitutionally

excessive, since we have never required mathematical exactitude in fitting punishment to crime. But it is a further indication that the penalty under consideration is unusual, and if combined with like results from the other *Lynch* tests, may result in a finding of impermissible disproportion.

C

Under the third *Lynch* test the sentence is examined in light of penalties imposed in other jurisdictions for the same offense. As with the previous tests this inquiry is not mechanical but will, if the results warrant, provide an additional ground for suspecting the constitutionality of the challenged penalty.

Nor are we concerned here with conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide. In the vast majority of cases the penalties imposed by the Legislature are just and equitable. Occasionally there may appear those "isolated excessive penalties" enacted "in response to transitory public emotion" that were condemned in *Lynch*. (8 Cal.3d at p. 426.) But in the main our codes have served as a model for the nation rather than a mere mirror of the laws of other jurisdictions, and we have no inclination to arbitrarily reverse that process.

Yet when there appears a significant disproportion between a challenged penalty and that imposed for the same crime by our sister states, the penalty should be deemed suspect. In *Lynch* it was found that only two states permitted life-maximum sentences for second-offense exhibitionists, while the overwhelming majority disposed of the problem by a short jail term and/or a small fine. (8 Cal.3d at p. 436.) In *Foss* we determined that although a number of states imposed a minimum 10-year term for heroin sale with a prior narcotics offense, only four precluded parole consideration for that length of time. (10 Cal.3d at p. 928.) In each case we held the comparative evidence to be indicative of the excess of the California term.

Here we are presented with similar data. With the sole exception of Arizona, no jurisdiction imposes a life term for the offense of assault with a deadly weapon. Forty-six states and the District of Columbia provide that the offense is punishable in terms of years, usually with a maximum of 5 or 10 years and never in excess of 21. The remaining two states do not appear to have a statute similar to section 245(a). With

regard to assault by means of force likely to produce great bodily harm, we find that 7 states have no felony assault statute, 16 impose a term of 5 years or less, 3 give a term of 6 to 7 years, 16 provide a term of 10 years, and 8 impose various terms up to and including 20 years.[10]

It follows that by application of the criteria delineated in *Lynch* the penalty provision of section 245(a) is suspect. The sentence is potentially disproportionate in terms of punishment imposed within California for more serious offenses, and actually disproportionate with respect to penalties assessed in other jurisdictions for the same offense.

The first *Lynch* test thus becomes dispositive; yet as we have seen, the myriad of factual contexts comprising offenses punishable under section 245(a) precludes an *a priori* appraisal of the precise nature of the crime. ■ Accordingly we are impelled to conclude that there can be circumstances, as yet undefined, when imposition of a life-maximum sentence for violation of section 245(a) would constitute cruel or unusual punishment.[11]

## III

■ A statute valid on its face may be unconstitutionally applied. (*Yick Wo* v. *Hopkins* (1886) 118 U.S. 356, 373-374 [30 L.Ed. 220, 227-228, 6 S.Ct. 1064]; *Brock* v. *Superior Court* (1939) 12 Cal.2d 605, 610 [86 P.2d

[10]The proposed new California Criminal Code would establish a sliding scale of penalties, with a maximum of up to 15 years for specific intent, nonintoxicated, aggravated assaults with a deadly weapon (or upon the person of a peace officer) resulting in serious bodily harm. (§§ 820, 315, subd. (c).) The American Law Institute's Model Penal Code (Proposed Official Draft 1969) would set a maximum penalty of 10 years for "aggravated assault." (§§ 211.1, 6.06.) As noted above, prior to 1970 the maximum penalty under section 245(a) was 10 years, and thus was more in line with accepted penalties nationwide. (Fn. 3, *ante*.)

[11]The case of *People* v. *Jennings* (1972) 22 Cal.App.3d 945 [99 Cal.Rptr. 739], does not compel a different conclusion. There it was held that the penalty provision of section 245(a) was not unconstitutional as violative of the equal protection clause of the Fourteenth Amendment, although a defendant convicted of this offense receives a greater penalty than one convicted of the more serious crime of assault with intent to commit murder. (Pen. Code, § 217; 1 to 14 years.) However, it does not appear that the *Jennings* court was presented with the claim that the statute prescribed cruel or unusual punishment in violation of article I, section 17.

In a case decided nearly nine decades ago, *Ex parte Mitchell* (1886) 70 Cal. 1, 2 [11 P. 488], the present issue was briefly considered and the court concluded that section 245 was not violative of former article I, section 6. At the time *Mitchell* was decided, however, the maximum term of imprisonment for this offense was two years. (See fn. 3, *ante*.)

805]; *Wade* v. *City & County of San Francisco* (1947) 82 Cal.App.2d 337, 338-339 [186 P.2d 181]; cf. *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726].) In *People* v. *Schueren* (1973) 10 Cal.3d 553 [111 Cal.Rptr. 129, 516 P.2d 833], we invoked this principle to declare unconstitutional under former article I, section 6, an imposition of a life-maximum penalty for violation of section 245(a). The defendant in *Schueren* had been charged with assault with a deadly weapon with intent to commit murder (Pen. Code, § 217; 1 to 14 years), and was convicted of the lesser included offense defined in section 245(a).[12] We observed that "had defendant pleaded guilty to the offense charged or been found guilty of that offense his prison term could not have exceeded 14 years but by asserting his constitutional rights . . . and by successfully defending against the crime charged . . . he is now faced with the possibility of life in prison." (10 Cal.3d at p. 560.) We concluded, "under the circumstances of this case a prison term exceeding 14 years for assault with a deadly weapon . . . is an unconstitutional application of the penalty provision of that section." (*Id.* at p. 561.)

Defendant asserts there may likewise be occasions where because of the lack of culpability of the individual offender a life-maximum sentence would be an unconstitutional application of section 245(a). The contention, for the reasons given above, is meritorious. However, we refuse to accept defendant's further assertion that the provision is therefore void in its entirety. Rather we assume the Legislature intended that the statute be constitutionally applied, and we thus interpret the penalty provision as presupposing that the Adult Authority would fix terms, within the statutory range, which are not disproportionate to the individual culpability of the offender.[13]

If superficially examined, this interpretation seems contrary to a major proposition in *Lynch*. There we said, "when a defendant under an indeterminate sentence challenges that sentence as cruel or unusual punishment in violation of the California Constitution, the test is

---

[12]The information was actually a composite of sections 217 and 245(a), thus making the section 245(a) offense necessarily included under the language of the accusatory pleading. (10 Cal.3d at p. 559.)

[13]The People point to language in *Schueren* in which we stated, "The People are still free to charge violations of sections 217 and 245 in separate counts." (10 Cal.3d at p. 561.) If the offense can constitutionally be charged in a separate count, it is urged that a fortiori it can be charged in a single count. We agree. Nothing said herein derogates from the power of the People to charge and convict under section 245. As discussed above, our sole concern is the unconstitutional application of the penalty provision to factual instances which are not sufficiently egregious to merit a life-maximum sentence.

whether the maximum term of imprisonment permitted by the statute punishing his offense exceeds the constitutional limit, regardless of whether a lesser term may be fixed in his particular case by the Adult Authority." (8 Cal.3d at p. 419.) Here it is the very ability of the Adult Authority to set a lesser term which preserves the validity of the challenged penalty.

Yet as discussed above there is a fundamental difference between *Lynch* and the instant case, namely, the nature of the "offense" defined by the Legislature. ■ If a statute proscribes a single, narrowly delineated mode of behavior—as in *Lynch*—it is appropriate in considering the constitutionality of the penalty to look only to the maximum in order to determine whether under any circumstances the crime would justify the punishment. But this analytic proves inconclusive when applied to a statute regulating a broad variety of conduct, since by definition there is no single "offense" to measure against the subject penalty. Accordingly in this context a consideration of only the maximum is fruitless, leaving as our sole alternative a determination whether in light of the individual offense the actual penalty imposed is excessive.

■ We recognize that traditionally "[o]ne who is legally convicted has no vested right to the determination of his sentence at less than maximum" (*In re Schoengarth* (1967) 66 Cal.2d 295, 302 [57 Cal.Rptr. 600, 425 P.2d 200].) Moreover, "a defendant under an indeterminate sentence has no 'vested right' to have his sentence fixed at the term first prescribed by the Adult Authority 'or any other period less than the maximum sentence provided by statute.'" (*Lynch*, at p. 417 of 8 Cal.3d, quoting from *In re Cowen* (1946) 27 Cal.2d 637, 641 [166 P.2d 279].) "It has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term" (*In re Lee* (1918) 177 Cal. 690, 693 [171 P. 958]), subject only to the ameliorative power of the Adult Authority to set a lesser term. (*Id.* at pp. 692-693; Pen. Code, §§ 3020-3025.)

But these propositions, valid in the abstract, must be qualified when the maximum term is challenged as disproportionate. In such a case a defendant has an undeniable "vested right" in insuring that his term be fixed proportionately to his offense. Thus a sentence may be unconstitutionally excessive either because the Adult Authority has fixed a term disproportionate to the offense or, in some circumstances, because no term whatever has been set. A failure to fix his term may be just as violative of a defendant's right as an actual excessive term, since "It is

fundamental to the indeterminate sentence law that every such sentence is for the maximum unless and until the Authority acts to fix a shorter term. The Authority may act just as validly by considering the case and then declining to reduce the term as by entering an order reducing it . . . . This principle of law is, of course, the same whether we are dealing with a maximum term of life or a maximum term of years." (*In re Mills* (1961) 55 Cal.2d 646, 653 [12 Cal.Rptr. 483, 361 P.2d 15].) "In the case of a life term convict who the Authority does not believe merits a lesser term it may, and customarily does, act by simply refraining from fixing his term at a span of years. Since by statute he is already serving a life term there is no occasion for the Authority to re-declare the fact." (*People* v. *Harmon* (1960) 54 Cal.2d 9, 16 [4 Cal.Rptr. 161, 351 P.2d 329].)

 We therefore hold that when a defendant convicted under a section encompassing a wide range of conduct challenges the statute as imposing cruel or unusual punishment, judicial review must await an initial determination by the Adult Authority of the proper term in the individual case. When the term is fixed a court can then analyze the constitutionality of the statute as applied. If the Authority, either by omission or by the exercise of its discretion, fails or declines within a reasonable time to set a term, the particular conduct will be measured against the statutory maximum. The *Lynch* criteria will continue to be employed, but analysis under the first test—i.e., the nature of the offense and/or the offender—will turn on the facts and circumstances of the individual case.

 Habeas corpus is the remedy available to an aggrieved petitioner after his term has been set, or if the Adult Authority fails to fix the term within a reasonable time. (*In re Foss* (1974) *supra,* 10 Cal.3d 910, 916-917; *In re Masching* (1953) 41 Cal.2d 530, 532 [261 P.2d 251].)[14] Any petitioner challenging his term as disproportionate will bear the burden of demonstrating that his sentence is excessive, which challenge, if devoid of merit, may be disposed of by summary denial. We regard this procedure preferable to an often inconclusive statute-by-statute analysis of the Penal Code in light of *Lynch.*[15]

---

[14]Nothing said herein should be taken to prohibit a petitioner in a genuine *Lynch* situation from challenging a penalty as cruel or unusual on direct appeal. But this remedy is available only if it is shown that the subject statute encompasses a narrow range of behavior which under no circumstances could constitutionally support the given penalty.

[15]There are presently a wide variety of offenses in the Penal Code carrying life maxima, ranging in culpability from murder (Pen. Code, § 190) to corrupt collusion with bidders or suppliers by the superintendent of state printing (Pen. Code, § 100; not less

In the present case the Adult Authority has not had the opportunity to determine, in the light of this opinion, the maximum sentence defendant should serve.[16] Thus it is premature to decide whether defendant's term would be disproportionate to his offense. Only when such a term is set, or if the Authority within a reasonable time decides not to fix a term, may defendant utilize the remedy of habeas corpus to determine if the penalty is excessive under the facts and circumstances of the crime of which he stands convicted.

The judgment is affirmed.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**CLARK, J.**—I concur in affirming the judgment, but dissent from holding the Adult Authority must promptly and irrevocably fix the maximum term of a prisoner committed under a statute "encompassing a wide range of conduct." The possibility the maximum sentence provided by law for such an offense may be so disproportionate to the culpability of a particular offender as to constitute cruel or unusual punishment should not be used as a pretext for judicial legislation radically altering the indeterminate sentence law. By refusing to entertain defendant's claim until he has served the term admittedly proportionate to his culpability, this court could protect his right to be free from cruel or unusual punishment without unduly interfering with the administration of the indeterminate sentence law.

The indeterminate sentence law once provided for early, irrevocable term fixing, but such requirements are clearly contrary to more recent expressions of legislative intent. As originally enacted in 1917, section 1168 of the Penal Code provided that "[t]he governing authority of the reformatory or prison in which such person may be confined . . . shall

---

than two years). Some may proscribe broad ranges of behavior, and it seems clear that the interests of judicial efficiency will best be served by allowing the Adult Authority to make an initial determination of the proper penalty for the individual offense before a judicial challenge is considered. (See Pen. Code, §§ 100, 110, 182, 190, 209, 210, 211, 216, 217.1, 245, 264, 264.1, 286, 288, 288a, 288b, 454, 461, 644, 647a, 12022, 12022.5, 12303.2, 12303.3, 12308, 12309.) In addition there are numerous Health and Safety Code and Military and Veterans Code sections prescribing life maxima for designated offenses.

[16]The dissents grossly overreact when they express apprehension that we are somehow altering the indeterminate sentence law. We have merely declared that we cannot evaluate whether punishment is cruel or unusual until the sentence is determined, or until the Adult Authority, after a reasonable time, fails or declines to do so. Nothing contained in our opinion affects the discretion vested by law in the Adult Authority. (See *In re Minnis* (1972) 7 Cal.3d 639, 644 [102 Cal.Rptr. 749, 498 P.2d 997].)

determine after the expiration of the minimum term of imprisonment . . . what length of time, if any, such person shall be confined . . . ." (Stats. 1917, ch. 527, § 1, p. 665.) A 1929 amendment to section 1168 added that "[t]he term of imprisonment so fixed by the state board of prison directors, shall not thereafter be increased or diminished by said board for any reason whatsoever except [the allowance or forfeiture of 'good time' credits]." (Stats. 1929, ch. 872, § 1, p. 1930.)

However, in 1935 another amendment to section 1168 broadened the board's power to refix terms. "In case any convicted person undergoing sentence in any of the State prisons commits any infraction of the rules and regulations of the prison board, or escapes while working outside such prison under the surveillance of prison guards, the Board of Prison Directors may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, and make a new order determining such length of time not exceeding the maximum penalty provided by law for the offense for which he was convicted . . . ." (Stats. 1935, ch. 603, § 1, p. 1700.) In the same amendment the requirement that the board "shall" fix a term after the expiration of the minimum term was deleted and the permissive "may" substituted.

Finally, in 1941, section 1168 was rewritten and various of its provisions distributed elsewhere in the Penal Code. Those governing the fixing of terms became sections 3020 and 3021. The 1941 amendment gave to the board, without apparent limitation, the power to "determine and redetermine" the time a prisoner must serve on his sentence or sentences. (Stats. 1941, ch. 106, §§ 13, 15, p. 1083.)

Thus the indeterminate sentence law has evolved over the past half-century from a program in which a prisoner was entitled to an early, irrevocable fixing of his maximum term, into one in which the prisoner has "no vested right to the determination of his sentence at less than maximum," and in which his term once fixed may be refixed at the statutory maximum for cause at any time. (*In re Schoengarth* (1967) 66 Cal.2d 295, 302 [57 Cal.Rptr. 600, 425 P.2d 200].) There are indications that the appropriate branches of government may soon reverse this trend, but it is not our province to do so.

McComb, J., concurred.

**RICHARDSON, J.**—I join in Justice Clark's concurring and dissenting opinion, and add only the following:

I readily concur in the majority opinion insofar as it concludes that Penal Code section 245, subdivision (a), is constitutional on its face. Although a maximum term of life imprisonment would seem excessive as applied to certain offenders under section 245, such a term may be wholly justified as applied to others. Furthermore, I believe it fair to conclude that by reason of the availability of parole, only rarely will a person sentenced under section 245 actually serve an unduly prolonged term.

I respectfully disagree, however, with the majority's holding, unsupported by prior authority, that whenever a person sentenced under section 245 challenges his indefinite sentence as constituting cruel or unusual punishment, the Adult Authority must, within a reasonable time thereafter, fix the "proper term" of confinement or else risk reversal of the conviction on cruel and unusual punishment grounds. (*Ante,* p. 183.) Under the majority's opinion, unless the Adult Authority *irrevocably fixes a definite maximum term of imprisonment* for each prisoner sentenced under the Indeterminate Sentence Law, the courts will presume that the actual term is the statutory maximum (i.e., life imprisonment in the instant case) and will "analyze the constitutionality of the statute" accordingly.

In my view, the majority (in two short paragraphs of the opinion) substantially alter the Indeterminate Sentence Law, for in order to avoid a ruling that an indeterminate sentence in a particular case is cruel and unusual (as in *In re Lynch,* 8 Cal.3d 410, 419 [105 Cal.Rptr. 217, 503 P.2d 921]), the Adult Authority will be compelled to forfeit its term-fixing discretion and set individual maximum terms for every prisoner, terms which cannot thereafter be increased by the authority. I see no escape from the conclusion that the *flexibility* which is the heart of the indeterminate sentence system is thereby destroyed.

The majority attempt to justify this major change in the effect of the law on the ground that an initial fixing of the maximum term is required so that "a court can then analyze the constitutionality of the statute as applied." (*Ante,* p. 183.) The majority ignore the fact, properly noted by Justice Clark, that the Indeterminate Sentence Law has operated in a constitutional fashion since its inception and, despite the absence of initial term-fixing, has withstood innumerable constitutional challenges.

Further, the majority's holding in this regard is directly contrary to the Legislature's very express statutory command contained in Penal Code section 3020: "In the case of all persons heretofore or hereafter sentenced under the provisions of Section 1168 of this code [indeterminate sentencing], the Adult Authority may determine *and redetermine*, after the actual commencement of imprisonment, what length of time, if any, such person shall be imprisoned . . . ." (Italics added.)

Finally, the majority flatly contradict the unanimous expression of this court in *In re Schoengarth*, 66 Cal.2d 295, 302 [57 Cal.Rptr. 600, 425 P.2d 200], wherein it described the legislative import of Penal Code section 3020 in the following clear and unambiguous words: "The Adult Authority, by statute, has exclusive jurisdiction to fix the length of time a prisoner must serve within the limits of an indeterminate sentence. [Citation.] *One who is legally convicted has no vested right to the determination of his sentence at less than maximum* [citations], *and hence the authority 'may redetermine such sentences as conditions require'* [citations]." (Italics added.)

I see no basis in logic or reason on which to reconcile the majority opinion either with the clear language of Penal Code section 3020 or the relatively recent unanimous expression of this court in *Schoengarth*. Nor are there any compelling reasons why the Adult Authority must fix a prisoner's maximum term so that courts can "analyze" the constitutionality of the term. As I have suggested above, in most cases a prisoner will be released from confinement well within the range of penalties permitted under the "cruel and unusual punishment" provisions of the federal and state Constitutions. In those relatively rare cases in which a prisoner is confined beyond those limits, the habeas corpus remedy is available to secure his release. (See *In re Sturm*, 11 Cal.3d 258, 269 [113 Cal.Rptr. 361, 521 P.2d 97].) I see no intrinsic *constitutional* impairment in the system.

There are very valid and demonstrable social, penal, and psychological reasons for changes in the Indeterminate Sentence Law. We are advised that the Legislature has the law under close study, and indeed that the Adult Authority already has implemented administratively a plan for major reform in its application. The present system is, no doubt, ripe for major changes in procedure. Nonetheless, in my view, the appropriate changes should come from legislative hands far better equipped to evaluate alternatives, to weigh conflicting policy considera-

tions, and to develop a carefully conceived plan of reform. The system has been subjected to the judicial microscope many, many times. The changes are neither compelled by, nor should they result from, any "constitutional" infirmities previously concealed or recently revealed.

McComb, J., concurred.

Respondent's petition for a rehearing was denied June 4, 1975. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.