Filed 4/1/15  P. v. Pacheco CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR PACHECO, JR.,<br><br>    Defendant and Appellant. | H039268<br>(Monterey County<br>Super. Ct. No. SS121602)<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING |

BY THE COURT:

It is ordered the opinion filed herein on March 4, 2015, be modified as follows:

On page 9, remove footnote 2.

On page 10, first full paragraph, replace the third sentence that starts with "As Pacheco acknowledges" with the following:

As Pacheco acknowledges, "the bruise on [Doe's] forehead"—evidenced by Officer Lynd's testimony and the photographs admitted at trial—"corroborated Doe's testimony that [Pacheco] hit her."

There is no change in judgment.  The petition for rehearing is denied.


Dated:_____                    _____

                                                                                        Premo, J.



_____                    _____

            Rushing, P.J.                                                            Elia, J.

Filed 3/4/15  (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039268 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS121602) |
| v. | |
| VICTOR PACHECO, JR., | |
| Defendant and Appellant. | |

During a fight, defendant Victor Pacheco, Jr., pulled the mother of his children to the floor by her hair, punched her in the face, and stomped on her foot.  Their two daughters witnessed the incident.  Pacheco was charged with multiple crimes in connection with the incident.  Following a trial, a jury found him guilty of (1) infliction of corporal injury on a cohabitant/parent of child (Pen. Code, § 273.5, subd. (a));[1] (2) assault by force likely to produce great bodily injury (§ 245, subd. (a)(4)); (3) dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)); (4) possession of ammunition by a felon (§ 30305, subd. (a)(1)); (5) misdemeanor false imprisonment; and (6) misdemeanor child endangerment.

On appeal, Pacheco maintains there was insufficient evidence to support his conviction for assault by force likely to produce great bodily injury.  He also contends the trial court erred by failing to stay his sentence for dissuading a witness under section 654 and that, alternatively, the trial court erroneously believed it was required to impose a

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

consecutive sentence for that offense.  We shall affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Pacheco Is Charged*

On October 9, 2012, the Monterey County District Attorney filed an information charging Pacheco with infliction of corporal injury on a cohabitant/parent of child (§ 273.5, subd. (a), count 1); assault by force likely to produce great bodily injury (§ 245, subd. (a)(4), count 2), false imprisonment by violence (§ 236, count 3); dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count 4); child endangerment (§ 273a, subd. (a), count 5); possession of ammunition by a felon (§ 30305, subd. (a)(1), count 6); and possession of a firearm by a felon (§ 29800, subd. (a)(1), count 7).  The information alleged that Pacheco had a prior strike conviction (§ 1170.12, subd. (c)(1)).

### B.     *Evidence Adduced at Trial*

Pacheco was tried before a jury in December 2012.

#### 1.     *Jane Doe*

Jane Doe testified that she used to date Pacheco with whom she has two daughters, aged two-and-a-half and one-and-a-half.  Doe began dating Pacheco in September 2009 and got pregnant shortly thereafter.  In April 2010, Doe moved into a home in Salinas that Pacheco shared with a number of family members and renters.

Doe testified that Pacheco went to his cousin's funeral on the morning of August 9, 2012.  Pacheco was gone at a family gathering following the funeral for much of the day and Doe became worried that he would come home drunk or high and become violent.  She was concerned because Pacheco had told her some of his cousins "did meth" and he had a history of hitting her when he was under the influence.  Doe tried to reach Pacheco by calling his cell phone and, when he did not answer, by calling his sister and brother.  Eventually she spoke with him on the phone and they fought about whether he should come home.

2

Pacheco arrived home shortly before 6:00 that evening. According to Doe, he barged into their bedroom where she was sitting with their daughters, who were napping. He yelled "What the 'F' is your problem? Why are you calling me so much?" Doe testified that Pacheco grabbed her by the hair and threw her to the floor. Doe grabbed the phone, which was nearby, and told Pacheco she was going to call the police. He grabbed the phone away and threw it on the wood floor, causing the battery to fly out. At the time, Doe believed the impact had broken the phone. Their younger daughter began crying and Pacheco picked her up. While he did so, Doe fled to the living room. She attempted to leave the house but Pacheco blocked her way. She then returned to the bedroom to retrieve her purse. There, Pacheco punched her in the face with a closed fist, while still holding their daughter. Doe testified that she "wasn't expecting" the punch. Doe retreated to the living room where the two continued arguing. Pacheco stomped on Doe's foot and blocked the door with his body so she could not leave. Meanwhile, their older daughter had begun to cry. Doe convinced Pacheco to go check on the girl and ran out of the house when he did.

Pacheco caught up with Doe in the driveway. He told her to go back inside and tried to drag her back to the house by the arm. Doe got down on the pavement in an effort to resist him. Her head bumped on the ground a few times as he tried to drag her into the house. Doe testified that she was screaming for help and Pacheco tried to calm her down. Eventually, he left her and went inside to check on the children.

At that point, Doe--wearing only a t-shirt and boxers--ran to a payphone a block away. She called 9-1-1 and said she needed an officer because her boyfriend had hit her. Pacheco approached Doe while she was on the phone with the 9-1-1 operator and tried to persuade her to return to the house. He walked away before officers arrived.

When the officers arrived, they took photographs of Doe's injuries which were admitted into evidence at trial. Doe took additional pictures the following day, which also were admitted into evidence at trial. Doe testified that her face was bruised where

3

Pacheco hit her. She also had bruising on her arm where he grabbed her and tried to drag her into the house and on her foot where he stomped on it. Doe returned to the house with the officers. Pacheco and the girls were gone. Doe opened Pacheco's safe for the officers; it contained three bullets.

Doe testified that Pacheco had been violent with her frequently during their relationship, including hitting her in the face and kicking her, both while she was pregnant.

### 2. Officer Josh Lynd

Josh Lynd, a Salinas police officer, testified that he responded to Doe's 9-1-1 call on August 9, 2012. He observed swelling above her left eye, abrasions on her arms, and redness on her foot. Back at the house, he retrieved three .357-caliber rounds from a safe in which Doe said Pacheco sometimes stored firearms. He also observed a cordless phone with the battery out and the back missing.

### 3. Delsi Espinoza

Defense witness Delsi Espinoza testified that in August 2012 she was renting a room in the Salinas home where Pacheco and Doe lived. Espinoza observed part of the fight between Pacheco and Doe. She was in the kitchen and saw Doe sitting on the driveway crying; Pacheco was standing over her talking to her. Espinoza testified that she watched the couple for about 20 minutes and did not see Pacheco touch Doe. Eventually, Pacheco came back inside and asked Espinoza to watch the two girls. She did so for the approximately five minutes while he was gone. When Pacheco returned to the house Espinoza locked herself in her room. She remained there when Doe returned with the police.

### 4. Doroteo Ochoa

Doroteo Ochoa, another renter in the Pacheco home, also testified for the defense. He testified that he heard Pacheco and Doe arguing on the day of the August 2012 incident. He heard someone run outside and went outside to see what was happening.

4

He saw Doe and Pacheco, who he watched for about the next 15 minutes. During that time, Doe was crying and saying she wanted to leave; Pacheco told her to stay for the girls and tried to pick her up. Ochoa did not see Pacheco hit Doe.

### 5. *Pacheco*

Pacheco testified in his own defense. He stated that when he arrived home from the funeral on August 9, 2012, he asked Doe--in reference to her many calls--why she was overreacting. He stated: "she tried to get up, and I just told her to calm down. As soon as she stood up, I guess she met my hands and she thought I was holding her down or pushing her down, so she just got really aggressive and started just screaming and kicking." He said he tried to "calm her down with [his] hands" and denied hitting her. According to Pacheco, it was Doe who threw down the phone in frustration because it did not work.

Pacheco testified that Doe threw herself down on the driveway outside and made "a scene for the neighbors to see." He explained that he tried to pick her up but she was "just dead weight." After about 10 minutes he went back inside. He then went back outside and found Doe at the payphone down the street. He testified that, there, he tried to calm her down and told her not to "make any more drama." When she refused to come home, he walked back to the house, got the girls, and returned to the family gathering with them.

Pacheco denied ever hitting Doe during their relationship. He also denied that the bullets found in the safe belonged to him.

### C. *Verdict, Sentencing, and Appeal*

The jury returned its verdict on December 14, 2012, after deliberating for one day. It found Pacheco guilty of infliction of corporal injury on a cohabitant/parent of child (count 1), assault by force likely to produce great bodily injury (count 2), dissuading a witness from reporting a crime (count 4), and possession of ammunition by a felon (count 6). As to count 3, the jury acquitted defendant of false imprisonment by violence but

5

found him guilty of the lesser included offense of misdemeanor false imprisonment. The jury acquitted Pacheco of child endangerment, as charged in count 5, but found him guilty of the lesser included offense of misdemeanor child endangerment. The jury also acquitted Pacheco of possession of a firearm by a felon as charged in count 7. It found true the prior strike allegation.

Pacheco filed a motion to preclude multiple punishment, arguing that section 654 barred the court from imposing separate sentences on counts 1, 2, and 4 because the infliction of corporal injury on Doe (count 1), the assault of Doe (count 2), and the destruction of the phone (count 4) were part of an indivisible course of criminal conduct. At the sentencing hearing on January 25, 2013, the trial court agreed with respect to counts 1 and 2. The court also concluded that section 654 applied to the misdemeanor false imprisonment conviction (count 3). However, the court concluded that section 654 did not apply to count 4. With respect to that count the court stated: "The 136.1 is that strange crime, I suppose is one way of looking at it. Very understandably though that requires a mandatory full mid-term consecutive [sentence], which is two years. That's under [section] 1170.15, I believe."

The court sentenced defendant to a term of 11 years four months. That sentence consisted of (1) the middle term of three years, doubled, on count 1; (2) a consecutive middle term of two years, doubled, on count 4; and (3) a consecutive middle term of eight months, doubled, on count 6. The court imposed a concurrent six-month term on count 5 and stayed sentence on counts 2 and 3. In sentencing Pacheco on count 4, the court explained "the reason for consecutive sentences is not just [section] 1170.15, but there is an entirely separate incident in this case, which is a phone booth, where he does this thing. And that--that clearly is a distinct crime and it comes after the commission of the other crimes and justifies a consecutive sentence, separate and apart from [section] 1170.15."

6

Pacheco timely appealed. During the pendency of this appeal, Pacheco has sent a number of letters to this court complaining that his appellate counsel refuses to raise certain issues on appeal, requesting substitute appellate counsel, and suggesting his trial counsel was ineffective. We denied the request for substitute appellate counsel and denied the apparent request to assert an ineffective assistance of trial counsel claim without prejudice to Pacheco submitting a proper petition for habeas corpus. We enclosed a Judicial Council form No. MC-275 with that order. However, Pacheco has not filed a petition for habeas corpus.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Pacheco contends there was insufficient evidence to support his conviction on count 2, assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)). Pacheco maintains the evidence shows he inflicted only minor bruising, not great bodily injury, such that his conviction must be modified to reflect a conviction of the lesser included offense of misdemeanor assault (§ 240).

#### 1. *Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence which is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*Ibid.*) Nor do we ask whether *we* " 'believe[] that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v.*

7

*Virginia* (1979) 443 U.S. 307, 319.)

### 2. *Substantive Law*

"Great bodily injury," as that phrase is used in section 245, means "bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748 (*McDaniel*).) Neither physical contact nor actual injury is a required element of the offense of assault with force likely to produce great bodily injury. (*Ibid.* [assault with force likely to produce great bodily injury " ' "may be committed without infliction of any physical injury, and even though no blow is actually struck." ' "].) " ' "The issue, therefore, is not whether serious injury was caused, but whether the force used was such that it would be likely to cause it." ' " (*Ibid.*) "[W]hether the force used by the defendant was likely to produce great bodily injury is a question for the trier of fact to decide." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1221.)

"That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) Whether the force used by the defendant in striking a person with his fists was likely to cause great bodily injury depends on "the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*McDaniel*, *supra*, 159 Cal.App.4th at p. 749.) Any resulting injuries "are often highly probative of the amount of force used, [but are not] conclusive." (*People v. Muir* (1966) 244 Cal.App.2d 598, 604.)

### 3. *Substantial Evidence Supports the Finding That Pacheco Used Force Likely to Produce Great Bodily Injury*

Pacheco's challenge focuses on the extent of Doe's actual injuries. "Bruises and abrasions do not amount to great bodily injury," he says. For that contention, he relies on cases addressing whether the defendant in fact inflicted great bodily injury on the victim. (*People v. Harvey* (1992) 7 Cal.App.4th 823 [evidence sufficient to support jury's finding

8

that appellant intentionally inflicted great bodily injury under § 12022.7]; *People v. Beltran* (1989) 210 Cal.App.3d 1295 [great bodily injury allegation under § 12022.7]; *People v. Modiri* (2006) 39 Cal.4th 481 [great bodily injury finding under § 1192.7, subd. (c)(8), which incorporates similar language to § 12022.7]; *People v. Cross* (2008) 45 Cal.4th 58, 66 ["Proof that a victim's bodily injury is 'great' . . . within the meaning of section 12022.7--is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury."].) But the "essential determination" for purposes of section 245, subdivision (a)(4) is not whether defendant *actually* inflicted great bodily injury, but "whether the force [he used] was *likely* to produce great bodily injury." (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162, italics added (*Nirran W.*).) Accordingly, Pacheco's reliance on *Harvey*, *Beltran*, *Modiri*, and *Cross* is misplaced.

Doe testified that Pacheco pulled her to the floor by her hair, hit her in the face with a closed fist, stomped on her foot, and attempted to drag her back into the house by her arm, bumping her head on the pavement in the process. Doe said that her resulting injuries included scrapes on her arms and bruises on her face, arms, and foot. Officer Lynd confirmed that Doe was injured; he observed swelling above her left eye, abrasions on her arms, and redness on her foot. The jury also saw photographs of Doe's injuries.[2] On this evidence, a reasonable juror could conclude Pacheco used force likely to cause great bodily injury. (See *Nirran W.*, *supra*, 207 Cal.App.3d at p. 1162 [single blow with a fist to the victim's head deemed sufficient to support a finding that a defendant used force likely to produce great bodily injury]; *People v. Wingo* (1975) 14 Cal.3d 169, 177 ["a single errant swing by an intoxicated defendant could, under the language of the statute, result in conviction" for assault with force likely to produce great bodily injury];

---

[2] Those pictures are not in the record on appeal.

9

*People v. Score* (1941) 48 Cal.App.2d 495 [affirming § 245 conviction where defendant struck victim with fist, then accidentally fell on him, breaking victim's leg].)

Pacheco urges us to disregard Doe's account of the assault in assessing the sufficiency of the evidence, arguing that the verdict demonstrates the jury disbelieved her. But the evidence is sufficient even absent her testimony. As Pacheco acknowledges, "the bruise on [Doe's] forehead"--evidenced by Officer Lynd's testimony and presumably the photographs admitted at trial--"corroborated Doe's testimony that [Pacheco] hit her." That evidence of a single punch to the face supports the jury's guilty verdict on count 2. (See *Nirran W.*, *supra*, 207 Cal.App.3d at p. 1162; *People v. Wingo*, *supra*, 14 Cal.3d at p. 177.)

### B.   Sentencing Issues

Pacheco asserts two challenges to his sentence for dissuading a witness from reporting a crime (count 4). First, he argues the trial court's refusal to stay the consecutive four-year sentence violates section 654's proscription against multiple punishment and his due process rights. In Pacheco's view, the entire fight with Doe--including breaking the phone when she stated she was going to call the police--was part of an indivisible course of conduct and thus he should not be subject to multiple punishments. Second, he maintains that, alternatively, the matter must be remanded for resentencing on count 4 because the trial court did not understand that it had discretion to impose a concurrent term. We address each challenge in turn.

#### 1.   Multiple Punishment

##### a.   Statutory Principles and Standard of Review

Section 654 provides in relevant part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where

10

there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) If all the offenses were incident to one objective, the defendant may not be punished for more than one. Thus, a defendant who attempts murder by setting fire to the victim's bedroom may not be punished for both arson and attempted murder, because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it. (*Ibid.*) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*) For example, the objectives to drive while intoxicated and to drive with a suspended license were separately punishable, though they occurred simultaneously. (*Id.* at p. 552.) The purpose of the protection against multiple punishments is to insure that the defendant's punishment will be commensurate with his criminal culpability. (*Id.* at p. 552, fn. 4.)

Whether a defendant's multiple crimes involved multiple objectives generally is a question of fact for the sentencing court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) Where, as here, the trial court makes no express findings on the issue, its imposition of separate sentence terms may constitute an implied finding that the offenses were divisible. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

11

### b. The Trial Court Did Not Err In Refusing to Stay the Sentence on Count 4

The charge of dissuading a witness was based on the testimony of Doe and Officer Lynd. Doe testified that, in the middle of the assault, she grabbed the phone and said she was going to call the police. Pacheco grabbed the phone from her and threw it on the ground, causing the battery to come out. Officer Lynd testified that when he returned to the house with Doe the cordless phone's battery was out and the portion of the phone that holds the battery in place was missing.

That evidence supports two reasonable inferences regarding Pacheco's intent. One rationally could conclude that Pacheco's intent in both the assault and throwing the phone was to vent his anger at Doe and prevent her from leaving. But the evidence also is reasonably susceptible to the inference that Pacheco had an independent objective in throwing the phone--evading prosecution for the ongoing assault. That conclusion finds support in Doe's testimony that Pacheco threw the phone after Doe said she was going to call the police. "When the evidence reasonably justifies the findings of the trier of fact," as it does here, "reversal is not warranted merely because the circumstances may be reasonably reconciled otherwise." (*People v. Holly* (1976) 62 Cal.App.3d 797, 804.) Because the evidence supports a reasonable inference that defendant harbored separate objectives, the trial court did not err in holding that section 654 does not apply. For the same reason, the sentence does not violate Pacheco's due process rights.

### 2. Consecutive Sentencing on Count 4

Pacheco contends the trial court misconstrued section 1170.15 to require the imposition of a consecutive sentence on count 4. For the reasons discussed below, we agree but nevertheless decline to remand for resentencing because the court gave an independent reason for imposing a consecutive sentence, such that it is not reasonably probable the court would impose a different sentence on remand.

12

Section 1170.15 states, in relevant part: "if a person is convicted of a felony, and of an additional felony that is a violation of Section 136.1 or 137 and that was committed against the victim of, or a witness or potential witness with respect to, or a person who was about to give material information pertaining to, the first felony, . . . the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed . . . ." As the People acknowledge, section 1170.15 does not require the imposition of a consecutive term for a violation of section 136.1. Rather, a trial court retains the discretion to impose a concurrent term for such a conviction. However, where the sentencing court chooses to impose a consecutive term, section 1170.15 is triggered and requires that the sentence be the full middle term, not one-third of the middle term as section 1170.1, subdivision (a), provides. Pacheco claims the trial court's comments during the resentencing hearing indicate that it did not understand this discretion.

At sentencing, the court stated: "The 136.1 is that strange crime, I suppose is one way of looking at it. Very understandably though that requires a mandatory full mid-term consecutive [sentence], which is two years. That's under [section] 1170.15, I believe." Alone, that comment is ambiguous; it is unclear what aspect of the sentence the court believed to be "mandatory." The court may have been explaining--correctly--that when a consecutive sentence is imposed on a conviction for a violation of section 136.1, section 1170.15 mandates that the trial court impose a full middle term sentence. Alternatively, the court may have been expressing the incorrect view that a consecutive sentence was mandatory.

Additional comments the court made later in the hearing convince us that the latter is more likely. Specifically, the court gave two "reason[s] for [the] consecutive sentence[]" on count 4: (1) "[section] 1170.15" and (2) Pacheco's actions while Doe was at the payphone. That statement demonstrates the court viewed section 1170.15 as a

13

rationale for imposing a consecutive sentence on count 4. But, as explained above, section 1170.15 says nothing about the decision between consecutive and concurrent sentences and is triggered only after the court selects a consecutive sentence. Accordingly, we believe the trial court may have misunderstood the scope of its discretion, and believed consecutive sentencing was mandated.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Remand for resentencing is not required, however, where it would be an idle act because it is not reasonably probable the trial court would impose a different sentence. (*People v. Coelho* (2001) 89 Cal.App.4th 861, 889-890.) Here, the trial court stated an independent reason for imposing the consecutive sentence: the "entirely separate [payphone] incident," which the court deemed "a distinct crime [that came] after the commission of the other crimes." Given that independent basis for the sentence, it is "virtually certain the court would impose . . . [a] consecutive sentence[] if we remanded the matter." (*Id*. at p. 890.)

Pacheco contends that remand nevertheless is required because the payphone incident cannot support the consecutive sentence because the count 4 conviction was premised on the destruction of the house phone only. The People respond that Pacheco forfeited that argument. We agree.

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K*. (2007) 40 Cal.4th 875, 880.) The forfeiture rule applied claims the trial court failed "to properly make or articulate its discretionary sentencing choices" (*People v. Scott* (1994) 9 Cal.4th 331, 353) but not to an " 'unauthorized' " sentence, meaning one that "could not lawfully be imposed under any circumstance in the particular case." (*Id*. at p. 354.)

It is undisputed that the trial court had the discretion to impose a consecutive sentence, such that the sentence was not unauthorized. Factors relating to the decision to impose concurrent or consecutive sentences are set forth in California Rules of Court, rule 4.425. Among the relevant factors is whether "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a)(3).) Here, the trial court reasoned that the payphone incident justified a consecutive sentence because it involved "an entirely separate incident" and occurred "after the commission of the other crimes." Thus, the court focused on when and where the crimes occurred--criteria that informs a court's ordinary exercise of discretion to choose between consecutive or concurrent sentences under rule 4.425(a)(3). As such, Pacheco's contention as to the payphone incident is properly characterized as an argument that the trial court abused its discretion in selecting a consecutive sentence based on that incident. He forfeited that argument by failing to object below.

We are unpersuaded by Pacheco's contention that an objection would have been futile given the court's ruling on his section 654 motion. Defense counsel's argument with respect to section 654 focused on the throwing of the house phone. And, as discussed above, we affirm the court's ruling based on that incident. The trial court heard no argument as to whether it could properly base its sentence for count 4 on the payphone incident. Accordingly, we cannot agree with Pacheco that an objection specifically drawing the court's attention on the fact that count 4 was not premised on the payphone incident would have been futile.

### III. DISPOSITION

The judgment is affirmed.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.