Filed 2/22/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

THE PEOPLE,

    Plaintiff and Respondent,

v.

JEFFREY A. BAKER,

    Defendant and Appellant.

D071383

(Super. Ct. No. SCE352110)

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Scott Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jeffrey A. Baker of one count of oral copulation of his six-year-old niece in violation of Penal Code section 288.7, subdivision (b) and two counts of lewd acts in violation of Penal Code section 288, subdivision (a).[1]  At sentencing, the trial court imposed the mandatory 15-years-to-life prison sentence on the oral copulation count but expressed its view that the sentence was "absolutely disproportionate to the crime that was committed" and encouraged Baker to appeal on Eighth Amendment grounds.  (U.S. Const., 8th Amend.)  Baker argues that the trial court misunderstood its sentencing authority to not impose an unconstitutional sentence.  He further contends that the indeterminate sentence imposed was cruel and/or unusual in violation of the federal and state constitutions and that his counsel's failure to object on this basis amounted to ineffective assistance of counsel.

As the People concede, the trial court had the power to decide whether the mandatory prison term in this case was an unconstitutional sentence.  But even if the trial court misunderstood the scope of its authority, a remand for resentencing is unnecessary because the indeterminate 15-years-to-life sentence was not cruel and/or unusual as a matter of law.  (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)  For similar reasons Baker did not receive ineffective assistance of counsel.  Accordingly, we affirm.

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, Mary D. moved into her parents' single-family home in Lemon Grove with her four children, including six-year-old A.D. Space was tight downstairs, so A.D. slept on a couch upstairs, where Mary's sister Judy lived. Mary's 50-year-old brother, defendant Baker, visited in December from New Hampshire and met the children for the first time. The visit was positive.

Baker returned a few months later in March 2014 to take care of Judy's dogs while she was on vacation. Baker slept in Judy's bedroom, and A.D. continued to sleep on the couch. On the evening of March 8, Mary went to the airport to pick up her son, leaving A.D. upstairs with Baker. The next morning, A.D. approached Mary in the kitchen and told her Baker had licked her "down there," pointing to her crotch. Mary took A.D. to a bedroom and asked her to tell her what happened. A.D. told her that Baker had brought her into bed with him, rubbed her stomach, pulled down her underwear, licked her, and asked her if it felt good. She said "No, it's gross." Baker then kissed A.D. on the mouth, and A.D. pulled the blanket over her face to make him stop. Baker stopped.

Mary called the sheriff's department and made a report. She then took A.D. to the hospital. Hospital staff collected evidentiary swabs and clothing from A.D. and put her through a full Sexual Assault Response Team (SART) exam that indicated "no physical findings." Baker met with detectives and provided an oral swab.

A.D. underwent a forensic interview with social worker Sheri Rouse on March 10. She said she was sleeping by her "Uncle Jeff" in bed. He first rubbed her stomach "nice and softly," which felt good. Then he pulled down her underwear and licked her "on the

3

middle" one time.  A.D. felt his tongue and saw it.  Baker asked if it felt good; she said

"No, it feels gross," and he stopped.  He then kissed her "in the middle of [her] mouth"

with a "lick kiss."  She covered her mouth so he couldn't "do a lick kiss anymore."  Baker

told her "sorry," and they went to sleep.  A.D. told Rouse she kept thinking about what

happened and felt "disgusting."  Her mom had told her she could not go near Baker,

which made her sad.  She wanted to ask Uncle Jeff not to lick her anymore because

"[t]hat would just be nice and not hurt his feelings."

Subsequent analysis revealed male human saliva in the crotch of A.D.'s

underwear, but not enough DNA for further analysis.  Human saliva was found on A.D.'s

external genital swabs.  Further analysis showed there was a mixture of DNA on that

swab.  The major profile was consistent with A.D.'s DNA, and the minor profile was

consistent with Baker's DNA.  The criminalist calculated a random match probability to

estimate the rarity of the minor profile.  There was a one in 46-trillion chance that a

random person in the population would contribute to the minor DNA profile, indicating

that there was likely only one person in the population with that DNA.  Perioral swabs

taken near A.D.'s mouth contained male DNA, but not enough for further analysis.

4

Baker was charged by information of oral copulation on a child under the age of 10 in violation of section 288.7, subdivision (b) (count 1).[2] He was also charged with two counts of lewd acts upon a child under the age of 14 (hand to vagina and kissing) in violation of section 288, subdivision (a) (counts 2 and 3).[3] Following trial, the jury convicted him on all three counts. Before sentencing, the probation department submitted a report stating Baker was 53 years old with an "insignificant record of prior criminal conduct." Baker committed burglary in 1981 as a juvenile and misdemeanor theft in 1995, for which he successfully completed probation. He declined to participate in a presentence interview without his attorney, share his personal history, or participate in a COMPAS assessment (Correctional Offender Management Profiling for Alternative Sanctions). The probation officer asked if Baker had anything else to say, and he replied, "15 years is 15 years, my friend."

---

[2]    Section 288.7, subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger, is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." "Oral copulation is defined as any contact, no matter how slight, between the mouth of one person and the sexual organ of another. Penetration is not required." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79–80.) The phrase "10 years or younger" means " 'under 11 years of age.' " (*People v. Cornett* (2012) 53 Cal. 4th 1261, 1275 (*Cornett*).)

[3]    Section 288, subdivision (a) provides in relevant part: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

The probation report used the STATIC-99R risk assessment to determine his risk for sexual offense recidivism. His score put him in the "Low Risk Category" with a 1.9 percent chance of recidivism within five years of release from custody. Even so, the report recommended sentencing Baker to a term of 15 years to life on the section 288.7, subdivision (b) charge due to the "egregious" nature of the crime and his lack of cooperation in the presentence interview. It recommended the middle term of six years for the two section 288, subdivision (a) counts.

Given his conviction under section 288.7, Baker was statutorily ineligible for probation. (See § 1203.065, subd. (a).) Nevertheless, the parties and the court mistakenly believed Baker could either receive probation or be sentenced for count 1 to the mandatory term under section 288.7, subdivision (b) of 15 years to life. Thus, at sentencing Baker's counsel urged the court to grant probation based on Baker's low risk for recidivism. With respect to his lack of cooperation, his counsel explained that Baker felt his prior conversations with law enforcement and family had been spun in a negative way. Although acknowledging that A.D. did not appear to be "scarred for life," the prosecutor faulted Baker for not admitting the crime. She urged the mandatory prison term, arguing "this type of case and this particular incident is some of the worst type of conduct there is on a child." Defense counsel challenged whether this case was "one of the worst," and the trial court remarked, "I'm not buying into that either."

The trial court denied probation and imposed the mandatory 15-years-to-life term on count 1. Concurrent six year terms were imposed on counts 2 and 3. In doing so,

6

however, the court expressed great discomfort with the sentence and urged Baker to appeal on Eighth Amendment grounds:

> "I am going to impose the 15-to-life commit. Before I do, I'm going to put a few things on the record. This, to me, is a glaring example of what happens when you take discretion away from a sentencing judge. I have no option but to impose this sentence. I cannot be called upon to evaluate the conduct of the defendant, the history of the defendant once I conclude it is a prison case. It is beyond comprehension for me, and probably for every one of these guys on the wall who did this job before me over the last 100 years, to ever contemplate a situation wherein we are forced to impose a sentence that is absolutely disproportionate to the crime that was committed in this case. That being said, the court will say for the record that the only reason this sentence is being imposed is because it is mandated by this particular code section. I certainly would invite Mr. Baker to appeal this decision, to assert at that point any Eighth Amendment rights he feels that he has. And hopefully someone in the position to review the case, based upon that, may come to a different conclusion. But for me to take that step at this particular level would be, in essence, to disregard the law.

> "I have concluded, and I did at the end of this case, that this was a prison case. It was a prison case from the beginning. Was it a life case? No. Not now, not a thousand lifetimes from now. I've been doing this job a long time. I have seen life‑top cases. I have sent people to prison for life. I have sentenced people to death. And this particular conduct, in this particular crime, absolutely, without question, does not justify the imposition of this sentence.

> "I've reviewed the criteria set forth in [California Rules of Court, rule 4.414], find the defendant is not a suitable candidate for probation, the ends of justice would not be met. It will be the order of the court that the defendant be committed to the Department of Corrections for the term of 15 years to life as mandated by this code section."

## DISCUSSION

On appeal, Baker challenges his indeterminate sentence of 15 years to life for violating section 288.7, subdivision (b). He claims the punishment is cruel and/or

7

unusual in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution.  Baker argues the trial court failed to understand its sentencing authority to avoid imposition of an unconstitutional sentence.  He asks us to remand the case for resentencing or, in the alternative, decide as a matter of law that his sentence for count 1 violates the federal or state constitutions.  Although his trial counsel did not object to the sentence on these grounds, he claims no objection was necessary or that he suffered ineffective assistance of counsel.

The record before us is, to be sure, unusual.  A thoughtful trial judge, moved by what he perceived to be significant unfairness given the particular facts of the case, expressed his conclusions to that effect in no uncertain terms.  But the court seems to have misunderstood the scope of its role.  Where a trial court concludes that a mandatory minimum sentence is grossly disproportionate to the circumstances of the crime, it has the constitutional authority—indeed, the constitutional duty—not to impose an unconstitutional sentence.  The responsibility to declare constitutional limitations on the power of coordinate branches of government belongs to the judicial branch in its entirety and not merely to appellate courts.  To enforce the constitution is not to "disregard the law."

That said, the power to declare a legislatively prescribed punishment unconstitutional should be rarely exercised, and not merely because a judge—trial or appellate—believes there has been a harsh result.  A punishment can be declared unconstitutionally disproportionate only after a careful review of both the facts of the case and the applicable appellate precedent.  Here, while an indeterminate term of life

8

imprisonment for a sexual assault on a six-year-old is a severe punishment that reasonable minds could well believe is excessive, applying the analysis set forth in the relevant case law makes clear it is not so disproportionate as to exceed the very high constitutional threshold.

A.    *May the Issue Be Raised?*

Before turning to Baker's constitutional challenge, we must decide whether the issue is preserved on appeal. Although his trial counsel did not object to his sentence as cruel and/or unusual, Baker argues an objection was unnecessary given the court's ruling. In the alternative, he claims he received ineffective assistance when his counsel failed to object.

As a general rule, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) A claim that a sentence is cruel or unusual requires a "fact specific" inquiry and is forfeited if not raised below. (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 27; *People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. Speight* (2014) 227 Cal.App.4th 1229, 1248.) Although the trial court identified a potential Eighth Amendment issue, the onus was on Baker's counsel to object on that basis and on state constitutional grounds. Baker has thus forfeited his claim, but we address the merits "to show counsel was not constitutionally ineffective by failing to make a futile or meritless objection." (*People v. Reyes* (2016) 246 Cal.App.4th 62, 86 (*Reyes*).)

9

B.    *Scope of the Trial Court's Authority and the Necessity for Remand*

Baker argues that the trial court misunderstood the scope of its sentencing authority not to impose a sentence that amounted to cruel and/or unusual punishment. He seeks remand for the trial court to properly exercise its authority and consider his constitutional claims. In response, the People appropriately concede that the trial court did not appreciate the scope of its sentencing authority. (See *People v. Felix* (2002) 108 Cal.App.4th 994, 999 [trial court has authority to intervene if mandatory punishment is unconstitutional]; *People v. Mora* (1995) 39 Cal.App.4th 607, 615 ["If the punishment mandated by law . . . is so grossly disproportionate to a particular defendant's individual culpability to constitute cruel or unusual punishment . . . , a court has authority to prevent the imposition of unconstitutional punishment."].) Nevertheless, they contend remand is unnecessary because whether a sentence amounted to cruel or unusual punishment is a question of law that we may decide ourselves on de novo review.

We agree that under the circumstances of this case, a remand is unnecessary. In *People v. Hamlin* (2009) 170 Cal.App.4th 1412 (*Hamlin*), a defendant claimed his life sentence for torture was cruel or unusual. (*Id.* at p. 1474.) He sought remand for a new sentencing hearing, arguing the trial court had erred in rejecting the claim. The Court of Appeal declined to remand, explaining:

> "Because the question of whether defendant's sentence amounted to cruel or unusual punishment is a question of law ([citation]), we can 'apply[] the correct standard' just as well as the trial court could. Thus, even if the trial court did err in the manner defendant asserts, remand is unnecessary, for we can determine ourselves, on de novo review, whether defendant's sentence was cruel or unusual."

(*Ibid.*) The same reasoning applies here, even though Baker did not make the argument before the trial court.

Baker relies on *People v. Leigh* (1985) 168 Cal.App.3d 217 (*Leigh*) to argue remand is appropriate. In *Leigh*, the trial court erroneously believed it lacked authority to reduce the offense from first degree to second degree murder to avoid a cruel or unusual punishment. (*Id.* at p. 223.) The Court of Appeal remanded the case for resentencing, explaining the trial court was not precluded from making the determination. (*Ibid.*) It further noted the trial court was "uniquely suited" "to analyze the panoply of factors that must be considered in determining the offender's 'state of mind,' 'personal characteristics,' and the degree of danger the offender poses to society." (*Ibid.*) *Leigh* stands for the proposition that trial courts may evaluate constitutionality at sentencing, not that trial courts alone may do so. (See *People v. Williams* (1986) 180 Cal.App.3d 922, 926 [*Leigh* merely holds that the constitutionality analysis is not within the *sole* province of the appellate court, not that it is properly the function of the trier of fact.].)

Baker also argues that remand would allow the trial court to "perform its vested role of determining the facts in the first instance" and notes that appellate courts defer to factual findings that are supported by substantial evidence. But any factual findings the trial court could make in Baker's favor—that it was a one-time occurrence by a first-time sex offender with an insignificant criminal history—are findings that we can (and do) assume in evaluating the constitutionality of Baker's sentence. The *significance* of those facts under the federal and state constitutions "presents a question of law subject to independent review; it is 'not a discretionary decision to which the appellate court must

11

defer.' " (*People v. Felix* (2002) 108 Cal.App.4th 994, 1000.) *People v. Deloza* (1998) 18 Cal.4th 585 (*Deloza*) fails to persuade for this reason. *Deloza* remanded for resentencing where the trial court misapplied sentencing law based on the erroneous belief that consecutive sentences were mandatory. (*Id.* at p. 600.) On remand, the trial court could exercise discretion to impose concurrent or consecutive sentences. (*Ibid.*)

By contrast, Baker challenges the constitutionality of a statutorily mandated sentence, a question of law that we review de novo. "Like the trial court, we are authorized to consider proportionality [of punishment] based on the facts." (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1197.) Remand is unnecessary because "we can determine ourselves, on de novo review, whether defendant's sentence was cruel or unusual." (*Hamlin, supra,* 170 Cal.App.4th at p. 1474.)

C.      *Baker's Life Sentence Is Not Cruel and/or Unusual*

"Section 288.7 was enacted as part of the Sex Offender Punishment, Control, and Containment Act of 2006 (the Act). [Citation.] . . . The primary purpose of the Act was to prevent 'future victimization' of the community by sex offenders. [Citation.] Among the provisions of the Act was the creation of several new criminal offenses involving child victims"—including a "new offense imposing an indeterminate life sentence for sexual intercourse, sodomy, oral copulation or sexual penetration of 'a child 10 years of age or younger' in section 288.7." (*Cornett, supra,* 53 Cal.4th at p. 1267.)

Baker contends his indeterminate sentence under section 288.7, subdivision (b) constitutes cruel and/or unusual punishment under the federal and state constitutions. Although he attempts a facial constitutional challenge, that challenge fails under *In re*

12

*Rodriguez* (1975) 14 Cal.3d 639 (*Rodriguez*). *Rodriguez* considered the constitutionality of an indeterminate one-year-to-life sentence for a single lewd act on a six-year-old child. (*Id.* at p. 643 & fn. 5.) The court rejected the facial challenge, noting that section 288 "encompasses offenses reflecting a wide range of culpability, including situations in which the life maximum may be a constitutionally permissible punishment." (*Id.* at p. 648.) The same is true of section 288.7, subdivision (b). Baker repeatedly notes his minimal criminal history and low risk for sex offense recidivism in challenging his sentence. This is an *as applied* challenge—i.e., that the mandatory sentence is cruel and unusual as applied to him. (*Id.* at p. 656.)

"The Eighth Amendment to the United States Constitution applies to the states. (*People v. Caballero* (2012) 55 Cal.4th 262, 265, fn. 1.) It prohibits the infliction of 'cruel *and* unusual' punishment. (U.S. Const., 8th Amend., italics added.) Article I, section 17 of the California Constitution prohibits infliction of '[c]ruel *or* unusual' punishment. (Italics added.) The distinction in wording is 'purposeful and substantive rather than merely semantic. [Citations.]' (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085.) As a result, we construe the state constitutional provision 'separately from its counterpart in the federal Constitution. [Citation.]' (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1136.)" (*People v. Palafox* (2014) 231 Cal.App.4th at 68, 82 (*Palafox*).)

    1.    *California Constitution*

A punishment is cruel or unusual in violation of the California Constitution "if, although not cruel or unusual in its method, it is so disproportionate to the crime for

13

which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 425 (*Lynch*).)  Because it is the Legislature's function to define crimes and prescribe punishments, the judiciary should not interfere "unless a statute prescribes a penalty 'out of all proportion to the offense.' " (*Id*. at pp. 414−415, 424.)  In reviewing an indeterminate sentence, "it is the maximum term prescribed by the statute—not a lesser period thereafter affixed as an 'incentive to well-doing'—which must survive constitutional scrutiny." (*Id*. at pp. 416−417.)  Thus, in evaluating Baker's sentence of 15 years to life, we must consider whether a life sentence withstands constitutional scrutiny, notwithstanding his parole eligibility in 15 years.

*Lynch* describes three "techniques" to determine whether a sentence is so disproportionate to the crime as to constitute cruel or unusual punishment.  (*Lynch, supra,* 8 Cal.3d at p. 425.)  We first consider "the nature of the offense and/or offender, with particular regard to the degree of danger both present to society." (*Ibid.*)  Next, we compare the sentence to "punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious." (*Id.* at p. 426.)  Finally, we compare the sentence "with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision.  (*Id.* at p. 427.)  The weight afforded to each prong may vary by case.  (See *People v. Dillon* (1983) 34 Cal.3d 441, 479 [relying heavily on first prong] (*Dillon*).)  "Disproportionality need not be established in all three areas." (*People v. Norman* (2003) 109 Cal.App.4th 221, 230.)

Applying this test, the California Supreme Court has found unconstitutional a life sentence for a second offense of indecent exposure (*Lynch, supra,* 8 Cal.3d at p. 413);

14

lewd and lascivious touching of "a child's private parts" in violation of section 288 (*Rodriguez, supra,* 14 Cal.3d at pp. 654−656); and felony-murder by a 17-year-old defendant (*Dillon, supra,* 34 Cal.3d at pp. 482, 489).

Nevertheless, "[t]he doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature.  Perhaps foremost among these are the definition of crime and the determination of punishment."  (*People v. Wingo* (1975) 14 Cal.3d 169, 174 (*Wingo*).)  Reducing a sentence as otherwise cruel or unusual "is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels."  (*Mora, supra,* 39 Cal.App.4th at p. 616.)  "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive."  (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494 (*Martinez*).)  Although Baker's sentence is severe, this is not such a rare case.

a.  *Nature of the offense and offender*

Factors to consider in evaluating the nature of the offense include the seriousness of the offense and the presence of violence, victims, or aggravating circumstances. (*Lynch, supra,* 8 Cal.3d at pp. 425−426; *Rodriguez, supra,* 14 Cal.3d at p. 654.)  We consider not only the offense in the abstract but also the facts of the crime in question— "i.e., the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts."  (*Dillon, supra,* 34 Cal.3d at p. 479; see *Reyes, supra,* 246 Cal.App.4th at p. 87.)  We also evaluate whether

the punishment fits *the criminal*. (*Lynch, supra,* at p. 437; *Dillon, supra,* at p. 479.) We examine the defendant "in the concrete rather than the abstract . . . focus[ing] on the particular person before the court, [to ask] whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Dillon, supra,* at p. 479.)

Baker was convicted of oral copulation of a six-year-old child. "There exists a strong public policy to protect children of tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) Along a spectrum ranging from murder, mayhem and torture on one end to petty theft on the other, "lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806; see *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244 ["sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"].)

Although the SART exam showed A.D. was not physically harmed, Baker "did not have to hurt her in order to do permanent psychological damage." (*Reyes, supra,* 246 Cal.App.4th at p. 85.) Courts have recognized that lewd conduct "may have lifelong consequences to the well-being of the child." (*Christensen, supra,* 229 Cal.App.4th at p. 806.) A.D. told the social worker she felt "disgusting" and kept thinking about what happened, indicating at least some level of psychological harm.

As for aggravating circumstances, A.D. was particularly vulnerable given her age, and the defendant abused a position of trust to commit the offense. (Cal. Rules of Court,

16

rule 4.421(a)(3) & (11); *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 [victim's vulnerability and defendant's abuse of trust were aggravating factors for the offense of forcible lewd acts on a child under 14].)  Baker's conduct was egregious, and he does not show it was materially different from other acts of oral copulation of a child under the age of 10 for which the Legislature has imposed a 15-years-to-life sentence.

Critically, Baker perpetrated not one but *three* sexual acts against A.D.  He touched her vagina, orally copulated her, and then kissed her mouth.  Although the three acts took place within a short period of time, Baker did not stop the molestation immediately and proceeded to kiss her on the mouth after she said the oral copulation felt "gross."  A.D. had to pull a blanket over her face to make him stop.  Unlike the youthful 17-year-old defendant in *Dillon*, Baker was a mature adult.  (Cf. *Dillon, supra,* 34 Cal.3d at p. 488; *Reyes, supra,* 246 Cal.App.4th at p. 88 [distinguishing *Dillon* on this basis as to 35-year-old convicted of rape and oral copulation of a minor].)  Here, as in *Reyes*, Baker "was in complete control of the situation, his actions were unprovoked, and he instigated multiple [] sex offenses against [A.D.]."  (*Reyes, supra,* at p. 88.)

Baker had an "insignificant criminal record" and no prior history of sex crimes.  Although these factors are favorable to him, they do not outweigh the other factors.  (See *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 845 [lack of prior record not determinative when "seriousness of the crime and the circumstances surrounding its commission substantially outweigh these factors"].)

Baker relies on *Rodriguez* to argue his punishment is unconstitutionally disproportionate to his crime.  The 26-year-old defendant in *Rodriguez* had a low IQ and

17

was functionally illiterate and unskilled. (*Rodriguez, supra,* 14 Cal.3d at p. 644, fn. 6.) He and his wife were driving when they saw a six-year-old girl skating. (*Id.* at pp. 643−644, fn. 5.) He pulled the child into the car, drove her to a less public place, lifted her skirt, and fondled her private parts. (*Ibid.*) The medical examiner found no signs of penetration of the child's sexual organs. (*Ibid.*) The defendant was charged and convicted under section 288, which at the time carried an indeterminate one-year-to-life sentence. (*Id.* at p. 643.) After serving 22 years, Rodriguez prevailed on his habeas petition.

The court concluded the 22 years Rodriguez had already served was unconstitutional as applied. (*Rodriguez, supra,* 14 Cal.3d at p. 648.) The crime "involved no violence and caused no physical harm to the victim. The episode lasted only a few minutes. No weapon was involved and petitioner attempted none of the dangerous offenses sometimes associated with violations of section 288." (*Id.* at pp. 654−655.) Moreover, the evidence showed the defendant's conduct "was explained in part by his limited intelligence, his frustrations brought about by intellectual and sexual inadequacy, and his inability to cope with these problems." (*Id.* at p. 655.) Despite the defendant's past history of sex crimes (*id.* at p. 644, fn. 6), the court concluded the defendant posed no "danger to society sufficient to justify such a prolonged period of imprisonment." (*Id.* at p. 655, fn. omitted.)

18

Nothing in the record suggests Baker has a low IQ, is illiterate or unskilled, or is coping with problems of sexual inadequacy.[4]  Whereas Rodriguez was convicted of unspecified fondling of a six-year-old child, Baker was convicted of oral copulation— conduct that the Legislature has since made clear is more heinous.  (Compare § 288, subd. (a) [three, six, or eight years] with § 288.7, subd. (b) [15 years to life].)  And Baker was convicted of not one but three separate sexual acts against A.D.[5]

We acknowledge that Baker's conduct is less aggravated than in other sex offense cases upholding life sentences.  *Chistensen* upheld a 27-year sentence for five counts of lewd acts against three elementary school boys in a daycare.  The court highlighted the fact that one of the victims suffered such psychological harm that he "was on the verge of being removed from the family home and placed in a 24-hour facility," and the defendant was a repeat offender who had "molested not one boy, but three."  (*Christensen, supra,* 229 Cal.App.4th at pp. 803–804.)  *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093 (*Meneses*), an Eighth Amendment case, upheld a 15-years-to-life sentence for a single lewd act that resulted in pregnancy; the pregnancy constituted great bodily injury that

---

[4]     Baker refused to provide his social history and ended his presentence interview with the probation department early, leaving us with only his STATIC-99R recidivism score to gauge whether he would act similarly in the future.

[5]     There are other differences too.  "*Rodriguez* did not involve a recidivist statute." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511; see § 667.51, subds. (a), (c).) Nor did it involve the one strike sex offender law, which sets a 25-years-to-life term for a defendant who kidnaps and commits a lewd act on a child under the age of 14.  (§ 667.61, subds. (c)(8), (e)(1), (j)(2); *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257 ["The sentences prescribed by section 667.61 greatly exceed the determinate sentences previously available for violations of section 288."].)

19

warranted the enhancement. (*Id.* at pp. 1089, 1094.) In *Reyes,* we upheld a life sentence without parole for oral copulation and rape of a 14-year-old during the commission of a burglary, deferring to the Legislature's determination that sex crimes against minors occurring during the commission of crimes that pose a heightened risk to human life warrant severe punishment. (*Reyes, supra,* 246 Cal.App.4th at p. 85.)

Although the facts of this case may be less serious than those in *Christensen*, *Meneses,* and *Reyes*, they are significantly more aggravated than those in *Rodriguez.* To the extent there is even slight disproportionality based on the nature of the offender, the second and third techniques under *Lynch* convince us that this is not that rare case where a "statute prescribes a penalty 'out of all proportion to the offense.' " (*Lynch, supra,* 8 Cal.3d at p. 424)

> b.    *Comparison of punishment for other crimes in California*

The second prong requires us to compare Baker's sentence to "punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious." (*Lynch, supra,* 8 Cal.3d at p. 426.) In so doing, we must remember that the Legislature (or sometimes the electorate) bears the responsibility for fixing the penalty of crimes. (*Id.* at pp. 423−424.) "Punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual." (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 530−531.)

20

Baker compares his sentence to those imposed for several "more serious" crimes such as murder, mayhem, and torture. More relevant for our purposes, he compares it to lesser sentences for sex crimes against children. Forcible sex trafficking of a minor (§ 236.1, subd. (c)(2)) and lewd acts with two sex offense priors (§§ 288, 667.51) carry terms of 15 years to life. The following crimes are *not* subject to indeterminate sentencing: forcible rape of a child under 14 (§§ 261, subd. (a)(2), 264, subd. (c)(1)); rape of a child under 14 in concert with another person (§ 264.1, subd. (b)(1)); pimping or pandering of a child under 16 (§§ 266h, subd. (b)(2), 266i, subds. (a)(2) & (b)(2)); and continuous sexual abuse of a child under 14 (§§ 288.5, subd. (a), 1203.066, subd. (b)).

The People respond by placing section 288.7, subdivision (b) along a spectrum. They point to a graduated scheme "whereby punishment increases as the victim's age decreases and the seriousness of sexual acts increases, with the harshest punishment meted out to adults who orally copulate or penetrate a child aged 10 or younger." The point is well taken. Oral copulation of a child under 14 and over 10 years younger than the defendant faces a three-, six-, or eight-year term. (§ 288a, subd. (c)(1).) That range decreases to 16 months, two, or three years if the child is under 16 and the defendant is over 21. (§ 288a, subd. (b)(2).) Section 288.7, subdivision (b) builds on section 288a's graduated scheme, mandating 15 years to life for oral copulation of a child 10 years of age or younger. Together, sections 288a and 288.7 reflect the Legislature's intent to increase the severity of punishment for oral copulation of younger victims.

But that analysis alone does not suffice. We find it relevant to consider other sections of the Penal Code that Baker omits from his discussion. Baker could have been

21

convicted under section 269 for the same conduct and received the same 15-years-to-life sentence for aggravated sexual assault. Pursuant to section 269, any person who commits forcible oral copulation or sexual penetration of a child under the age of 14 and seven or more years younger than the defendant "shall be punished by imprisonment in the state prison for 15 years to life." (§ 269, subds. (a)(4), (b).) The amount of force required is simply the "use of force sufficient to overcome the victim's will." (*People v. Guido* (2005) 125 Cal.App.4th 566, 576; *In re Asencio* (2008) 166 Cal.App.4th 1195, 1205.) Baker's oral copulation of A.D. would meet that standard.

For example, in *Asencio*, a defendant pulled down the underwear of his six-year-old niece, rolled onto her, rubbed her vagina, and penetrated it slightly with his finger. (166 Cal.App.4th at pp. 1197−1198.) He was sentenced to 15 years to life for the forcible sexual penetration count under section 269. (*Id.* at p. 1199.) Although he did not challenge the constitutionality of his life sentence, his conduct was similar to Baker's, and both were sentenced to 15 years to life.[6]

Also relevant is the "One Strike" sex offender law, section 667.61. (*People v. Rayford* (1994) 9 Cal.4th 1, 8.) Enacted in 1994, the law imposes lengthy indeterminate terms of 15 years to life or 25 years to life for defendants convicted of specified sexual offenses if certain aggravating factors are found true. (§ 667.61, subds. (a)–(b).) A defendant convicted of lewd acts or forcible oral copulation of a child under 14 and over 10 years younger than the defendant faces a *25-years-to-life* sentence if he or she

---

6    Indeed, section 288.7, subdivision (b) imposes the same 15-years-to-life sentence for both oral copulation and sexual penetration of a child younger than 10.

kidnapped the victim, committed the offense during a burglary, personally used a deadly weapon, committed the offense against more than one victim, tied or bound the victim or another person, or administered a controlled substance to the victim. (§ 667.61, subds. (c)(7), (e)(1)–(6), & (j)(2).) Thus, if Baker had been convicted of oral copulation or lewd acts on *two* children, or if other aggravating factors were found, he would face a sentence of 25 years to life under the One Strike law.

These provisions suggest a certain logic to the mandatory 15-years-to-life sentence under section 288.7, subdivision (b). The sentence continues the graded scale in section 288a, increasing the punishment for sex offenses against even younger children. Baker could have received the same punishment had he been charged and convicted under section 269 for the same conduct. If the jury found that he had committed a lewd act or oral copulation against two victims (or during the course of a burglary, etc.), he could face 25 years to life under section 667.61.

We again bear in mind that "[t]he power to define crimes and prescribe punishments is a legislative function." (*People v. Young* (1992) 11 Cal.App.4th 1299, 1308.) Our role is a limited one, and we proceed with great deference to the Legislature. (*Martinez, supra,* 76 Cal.App.4th at p. 494.) "Furthermore, great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*In re Wells* (1975) 46 Cal.App.3d 592, 599.)

In passing the Sex Offender Punishment, Control, and Containment Act of 2006, the Legislature sought to make it easier to sentence a defendant to a life term for particularly heinous sexual contact with a young child. (Sen. Com. on Public Safety,

23

com. on Sen. Bill No. 1128 (2005–2006 Reg. Sess.) as amended Mar. 7, 2006.)  Although a life sentence was possible under the One Strike law if certain factors were present, section 288.7 sought to broaden that net:

> "Existing law includes the 'one-strike' sex crime sentencing law that provides sentences of 15 or 25 years to life in certain sex crimes if specified circumstances in aggravation are found to be true.  (Pen. Code 667.61.)
>
> "[¶] . . . [¶]
>
> "This bill adds two new crimes to the crimes subject to one-strike sentencing:  oral copulation involving a child under the age of 10 and sexual penetration of a child under the age of 10 . . . ."

(Sen. Com. on Public Safety, com. on Sen. Bill No. 1128 (2005–2006 Reg. Sess.) as amended Mar. 7, 2006.)

A comparison of the mandatory 15-years-to-life sentence under section 288.7, subdivision (b) to the punishments for similar and more serious sex offenses in California does not suggest this is that "rarest of cases" in which "the length of a sentence mandated by the Legislature is unconstitutionally excessive."  (*Martinez, supra,* 76 Cal.App.4th at p. 494.)

   c. *Comparison of punishment for analogous crimes in other states*

In this step, we compare the sentence "with the punishments prescribed for the *same offense in other jurisdictions* having an identical or similar constitutional provision."  (*Lynch, supra,* 8 Cal.3d at p. 427.)  "That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual."  (*People v. Martinez, supra,* 71 Cal.App.4th at p. 1516.)  The state

constitution "does not require California to march in lockstep with other states in fashioning a penal code" or "require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' " (*Ibid.*, citing *Wingo, supra,* 14 Cal.3d at p. 179.) Only "when there appears a significant disproportion between a challenged penalty and that imposed for the same crime by our sister states" should the penalty be deemed suspect. (*Wingo, supra,* at p. 179.)

Baker cites the punishment for oral copulation in just two states, New York and Oregon. He does not indicate whether those states have "an identical or similar constitutional provision" against cruel or unusual punishment (*Lynch, supra,* 8 Cal.3d at p. 427), but at minimum, the Eighth Amendment applies. (*Graham v. Florida* (2010) 560 U.S. 48, 52.) Baker points out that in New York, oral sexual conduct with a child under 11 is punishable by five to 25 years in prison. (N.Y. Penal Law, §§ 70.02, subds. (1)(a) & (3)(a), 130.50, subd. (3).) He claims that in Oregon, oral intercourse with a child under 12 carries a 20-year maximum sentence. (Or. Rev. Stat. Ann. §§ 161.605, subd. (1), 163.405, subds. (1)(b) & (2).)

Baker is mistaken as to Oregon. Oral intercourse with a child under 12 constitutes sodomy in the first degree in Oregon and is punishable as a Class A felony. (Or. Rev. Stat. Ann. § 163.405, subds. (1)(b) & (2).) Class A felonies are generally subject to a 20-year maximum term. (Or. Rev. Stat. Ann. § 161.605, subd. (1).) But Oregon's legislature set a mandatory minimum term of 300 months, or 25 years, for sodomy in the first degree of a child under 12. (Or. Rev. Stat. Ann. § 137.700, subds. (1) & (2)(b)(E).)

California and Oregon are not outliers.  We have found ten similar statutes in other states.  (See Fla. Stat. Ann. §§ 800.04, subd. (5)(b) & 775.082, subd. (3)(a)4 [life or 25-year minimum for lewd act on child under 12]; Kan. Stat. Ann. §§ 21–5506, subd. (b)(3)(A), 21–6627, subd. (a)(1)(C) [25-years-to-life for fondling or touching of a child under 14]; Nev. Rev. Stat. Ann. §§ 201.230, subd. (2) [10-years-to-life for a lewd act on a child under 14], 200.366, subds. (1)(b) & (3) [35-years-to-life for sexual penetration of a child under 14 if no substantial bodily harm; else, life without parole]; Ariz. Rev. Stat. §§ 13–705(A) [life sentence for dangerous crimes against children including sexual conduct with a child under 12]; Mich. Comp. Laws Serv. § 750.520b, subds. (1)(a) & (2)(b) [25-years-to-life for sexual penetration of a child under 13]; Miss. Code Ann. §§ 97–3–101, subd. (3), 97–3–95, subd. (1)(d) [20-years-to-life for sexual penetration of a child under 14]; Neb. Rev. Stat. Ann. § 28–319.01, subds. (1)(a) & (2) [15-year minimum for sexual penetration of a child under 12]; 11 R.I. Gen. Laws §§ 37–8.1, 37-8.2 [25-years-to-life for sexual penetration of a child under 14]; S.C. Code Ann. §§ 16–3–651, subd. (h), 16–3–655, subds. (A)(1), (D)(1) [25-years-to-life for oral copulation of a child under 11]; Utah Code Ann. § 76–5–403.1, subds. (1) & (2)(a) [25-years-to-life for oral copulation of a child under the age of 14].)[7]  Many of these statutes were passed in the wake of a prominent sex offense case in Florida and modeled after that state's Jessica Lunsford Act (Jessica's Law).  In California, voters approved Jessica's Law by ballot

_____

[7]    We can comfortably compare Baker's sentence for oral copulation to sentences for sexual penetration in other states because the Legislature views the two as warranting the same punishment for a victim under the age of 10.  (§ 288.7, subd. (b).)

26

initiative (Proposition 83) just months after the Legislature enacted section 288.7 as part of the Sex Offender Punishment, Control, and Containment Act of 2006.

Although California's punishment for orally copulating a child under 10 is no doubt severe, it is not so disproportionate to the punishment imposed in other states to render Baker's sentence constitutionally suspect. (*Wingo, supra,* 14 Cal.3d at p. 179.)

Baker argues his life sentence is "even more cruel and unusual because it is mandatory." But "[t]here can be no serious contention . . . that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.' " (*Harmelin v. Michigan* (1991) 501 U.S. 957, 995 [upholding mandatory life sentence without parole for first-time offender for possession of 672 grams of cocaine]; see *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1214 [same principle applies to state constitutional challenge].)

In short, considering all three techniques under *Lynch,* we do not find Baker's indeterminate sentence under section 288.7, subdivision (b) so disproportionate to his crime that it shocks the conscience or offends fundamental notions of human dignity. (*Dillon, supra,* 34 Cal.3d at pp. 477–478; *Lynch, supra,* 8 Cal.3d at p. 424.) This is not that rarest of cases in which a sentence is out of all proportion to the offense in violation of the state constitution. (*Lynch, supra,* at p. 424.)

2. *Federal Constitution*

The Eighth Amendment of the United States Constitution states in full: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "Although it has always been uniformly accepted that the federal

cruel and unusual punishment clause prohibits the infliction of certain modes of punishment (for example, inherently barbaric punishments such as 'punishments of torture' [citation]), there has been some dispute, particularly outside the context of capital punishment, whether the provision also prohibits the imposition of punishment that is 'excessive' or 'disproportionate' in relation to the offense or offenses for which the punishment is imposed." (*In re Coley* (2012) 55 Cal.4th 524, 537−538.)

Baker relies heavily in his opening brief on *Solem v. Helm* (1983) 463 U.S. 277, in which the Supreme Court held unconstitutional a life without parole sentence for the defendant's seventh nonviolent felony of passing a worthless check. He does not note subsequent developments in Eighth Amendment jurisprudence, such as the majority's comment in *Harmelin v. Michigan* (1991) 501 U.S. 957 that "*Solem* was scarcely the expression of clear and well accepted constitutional law." (*Id.* at p. 965; see generally, *Christensen, supra,* 229 Cal.App.4th at pp. 804−806 [discussing post-*Solem* jurisprudence].) *Graham, supra,* 560 U.S. 48 is the Supreme Court's latest pronouncement on the matter. It clarifies that "[t]he concept of proportionality is central to the Eighth Amendment." (*Id.* at p. 60.)[8] The Eighth Amendment "contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to

---

[8]     There are two types of Eighth Amendment proportionality claims. The first is a gross proportionality challenge to a particular sentence given to a defendant. (*Graham, supra,* 560 U.S. at pp. 59, 61.) The second categorically challenges a type of sentence as applied to an entire class of offenders (e.g., juveniles) who commit a range of crimes. (*Ibid.*) Baker's challenge falls within the first category.

the crime.' " (*Id.* at pp. 59−60.) "[O]nly in the 'exceedingly rare' and 'extreme' case" will a sentence be grossly disproportionate to the crime. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73.)

There is considerable overlap in the state and federal approaches. "Although articulated slightly differently, both standards prohibit punishment that is 'grossly disproportionate' to the crime or the individual culpability of the defendant." (*People v. Mendez* (2010) 188 Cal.App.4th 47, 64.) "The touchstone in each is gross disproportionality." (*Palafox, supra,* 231 Cal.App.4th at p. 82.)

We begin an Eighth Amendment analysis "by comparing the gravity of the offense and the severity of the sentence." (*Graham, supra,* 560 U.S. at p. 60.) "This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history." (*Id.* at p. 88 (conc. opn. of Roberts, C.J.).) Only in the rare case in which this threshold comparison leads to an " 'inference of gross disproportionality' " do we proceed to "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Id.* at p. 60.)

For the reasons discussed above under the first prong of *Lynch*, the threshold test does not lead to an inference of gross disproportionality. (Cf. *Graham, supra,* 560 U.S. at pp. 92−93 (conc. opn. of Roberts, C.J.).) [strong inference found as to juvenile sentenced to life without parole where the crime and probation violation were less serious than offenses like murder or rape, and defendant's youth and immaturity made him

29

"markedly less culpable than a typical adult who commits the same offenses"].)

Although Baker's insignificant criminal record and low recidivism score point in his favor, his three separate sexual offenses against A.D. and abuse of trust against a vulnerable victim do not.  Certainly, a comparison of all the relevant factors does not lead to an " 'inference of *gross* disproportionality.' "  (*Id.* at p. 60, italics added.)  Baker cannot show that the sentence imposed on him, severe as it may be, violates the Eighth Amendment as applied to him.[9]

---

9       We reach this result without considering the Three Strikes cases cited by the People.  As Baker notes, the People misconstrue those cases as authorizing life sentences for minor theft offenses.  (See *Ewing v. California* (2003) 538 U.S. 11, 28–29 ["At the threshold, we note that Ewing incorrectly frames the issue.  The gravity of his offense was not merely 'shoplifting three golf clubs.'  Rather, Ewing was convicted of felony grand theft for stealing nearly $1,200 worth of merchandise after previously having been convicted of at least two 'violent' or 'serious' felonies."  "In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense:  '[I]t is in addition the interest . . .  in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'  [Citations.]  To give full effect to the State's choice of this legitimate penological goal, our proportionality review of Ewing's sentence must take that goal into account."].)

DISPOSITION

The judgment is affirmed.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.