Filed 4/27/26  P. v. Zenquis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BREEANA ZENQUIS, <br><br> Defendant and Appellant. | D086035 <br><br><br> (Super. Ct. No. SCD304119) |


APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed as modified.

Annie Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Connor O. Sakati, Deputy Attorneys General, for Plaintiff and Respondent.

Breeana Zenquis appeals from a judgment after a jury convicted her of battery with serious bodily injury and assault by means likely to produce great bodily injury.  She argues there is insufficient evidence to support the

conviction for assault by means likely to produce great bodily injury.  She further argues, and the People concede, that the probation order should be modified to reflect the trial court's oral rulings at sentencing.  We conclude that sufficient evidence supports the conviction for assault by means likely to produce great bodily injury.  We also accept the People's concession as to the probation order and modify it accordingly.  As so modified, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2024, Ann G. was visiting San Diego with her three children.  On their last day, they drove to Point Loma for fish tacos before their flight home.  The parking lot was crowded.  After Ann pulled into a parking spot, Zenquis stopped her truck behind her and accused Ann of stealing her spot.  Zenquis yelled, "If you stay here, you better be ready for a fight, you fucking white bitch."

After parking a few spots away, Zenquis approached Ann's car again on foot.  She knocked on Ann's window, tried to open the door, and yelled, "If you stay here, you better be ready for a fight.  You know I wanted this spot."  Ann told Zenquis she did not want to fight over a parking spot.  Zenquis walked away.

Ann and her children got out of the car.  Zenquis then returned and continued yelling at Ann.  She threatened to key their rental car while they were having lunch.

Ann was standing by the driver's door of her car in a narrow space between parked vehicles.  Zenquis approached and "shoulder checked" Ann, causing her to fall backwards against the car.  Ann pushed Zenquis back to create space for herself.  Zenquis then hit Ann in the head, grabbed her hair, yanked it backwards, and spun Ann around twice while pulling her into the

2

parking lot. Ann could feel her hair "ripping and breaking" and "pulling on the scalp." Zenquis was behind her and Ann could not see anything. Zenquis then let go of Ann's hair and punched her in the face with a closed fist. Ann described it as "one big punch" to her left eyebrow. Ann started bleeding profusely from a laceration to her eyebrow. Her sunglasses and cell phone went flying into the parking lot. Ann felt nauseous and was trying not to pass out in front of her children.

Zenquis left the scene driving her truck with a female passenger.

Ann went to the emergency room, where she received four stitches to the cut above her eye. She also suffered a scrape on her face, a cut on her lip, and bruises on her shoulder. Two days later, she went to urgent care because she was having a hard time sleeping, had a terrible headache, and was feeling nauseated. She later had another follow-up appointment to have the stitches removed. Ann has a permanent scar over her left eyebrow.

Another driver in the area caught part of the incident on his dashcam and a nearby business recorded it on a surveillance video. The dashcam and surveillance videos were admitted into evidence and played for the jury.[1]

Zenquis testified in her own defense. She testified that Ann threw the first punch and she responded in self-defense.

A jury found Zenquis guilty of battery with serious bodily injury (Pen. Code,[2] § 243, subd. (d)) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). However, the jury found not true separate

---

[1]    Zenquis requested transmission of one of the videos to this court. We have received and reviewed both of the videos.

[2]    All further undesignated statutory references are to the Penal Code.

3

allegations that Zenquis personally inflicted great bodily injury in the commission of the offenses (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).  The court granted Zenquis probation with conditions including 180 days custody in work furlough.

DISCUSSION

I

Zenquis first argues there is insufficient evidence to support the jury's guilty verdict for assault by "means of force likely to produce great bodily injury" (§ 245, subd. (a)(4)).  She contends that punching Ann once in the face with a closed fist was not likely to cause great bodily injury.  We conclude this was an issue of fact for the jury to decide and substantial evidence supports its verdict.

In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Section 245, subdivision (a)(4) defines aggravated assault to include "an assault upon the person of another by any means of force likely to produce great bodily injury."  Great bodily injury is defined as " 'an injury that is greater than minor or moderate harm.' " (*People v. Wyatt* (2012) 55 Cal.4th 694, 702; see also *People v. Sandoval* (2020) 50 Cal.App.5th 357, 361 [noting

4

that great bodily injury is "significant or substantial physical injury that is more than minor or moderate"].) " ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.' " [Citations.] Where to draw that line is for the jury to decide." (*People v. Cross* (2008) 45 Cal.4th 58, 64.) Great bodily injury can include contusions, abrasions, lacerations, and bruising. (*People v. Escobar* (1992) 3 Cal.4th 740, 752; *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464.)

"The use of hands or fist alone has been held sufficient to support a conviction of assault by means of force likely to produce great bodily injury." (*People v. Wingo* (1975) 14 Cal.3d 169, 176.) " 'Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which force was applied.' " (*People v. Medellin* (2020) 45 Cal.App.5th 519, 528 (*Medellin*).)

" 'Numerous cases have held that whether the force used by the defendant was likely to produce great bodily injury is a question for the trier of fact to decide.' " (*People v. Thiel* (2016) 5 Cal.App.5th 1201, 1213.) In this context, "likely" to produce great bodily injury "means more than 'a mere possibility.' " (*Medellin, supra*, 45 Cal.App.5th at p. 527.) "[T]he evidence must prove more than a mere possibility that the force *actually used* would result in greater than moderate harm." (*Id.* at p. 528.)

Viewed in the light most favorable to the jury's verdict, the evidence here is sufficient to satisfy this standard. Zenquis came at Ann from the curb, shoved Ann into her car in a narrow space, pulled her backwards by the hair into the parking lot, and then punched her in the face hard enough to cut her eyebrow and cause profuse bleeding, requiring four stitches and leaving a permanent scar. The punch targeted a vulnerable area of the body with

5

fragile bones and sensitive organs. It narrowly missed Ann's eye, which could have caused significantly greater harm. It could also have broken her nose or another facial bone. Moreover, the incident occurred in a parking lot where there was a risk of head trauma if Anne had fallen to the ground, which the jury could have concluded was more than a mere possibility from being shoved, pulled by the hair from the back, spun around backwards twice, and punched in the face. Ann also sustained a scrape on her face, a cut on her lip, bruises on her shoulder, and at least several days of nausea, headaches, and trouble sleeping. "Given the patient's presentation," the emergency room doctor was "concerned for potentially acute life-threatening illness and evaluation was undertaken to rule out such illnesses" but "there [was] no evidence of intracranial hemorrhage or skull fracture."

Considered in its totality, this evidence was sufficient to establish "more than a mere possibility that the force *actually used* would result in greater than moderate harm." (*Medellin, supra*, 45 Cal.App.5th at p. 528; see also *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161–1162 [rejecting defendant's argument that "one blow to the face of the victim could not have been likely to cause great bodily injury"].) We emphasize that our holding is based on the totality of circumstances presented to the jury, including both the injuries actually inflicted and those that could have resulted. We do not suggest that every punch to the face in a parking lot is sufficient to establish a likelihood of great bodily injury.

Zenquis relies heavily on the jury's findings that she did not *actually* inflict great bodily injury as reflected in its not true verdicts on the separate allegations under sections 1192.7, subdivision (c)(8) and 12022.7, subdivision (a). There are two problems with this argument. First, for the aggravated assault charge, the question is not whether Zenquis *actually* inflicted great

6

bodily injury, but whether such injury was *likely*. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 ["the statute focuses on . . . force *likely* to produce great bodily injury; whether the victim in fact suffers any harm is immaterial"].) Although the injury inflicted may be relevant, it is not determinative. Second, in evaluating whether the evidence was sufficient to support a guilty verdict, we consider only the evidence presented and we disregard the jury's not guilty or not true findings on other counts or enhancements. (*People v. Price* (2017) 8 Cal.App.5th 409, 452–453; *People v. Miranda* (2011) 192 Cal.App.4th 398, 405–406.) Thus, the jury's not true findings on the great bodily injury allegations have no legal significance in determining whether the evidence supports its guilty verdict on the charge of assault by means likely to produce great bodily injury. We therefore conclude that sufficient evidence supports the jury's verdict on this count.

## II

Zenquis next contends that the probation order should be modified to conform to the court's oral rulings at sentencing as follows: (1) the search condition should be modified to delete the requirement that she subject her computers and recordable media to searches; (2) the alcohol conditions should be deleted; and (3) the total fines should be reduced from $1,260 to $740. The People concede that the probation order should be so modified to conform to the court's oral rulings. We accept the People's concession and will modify the order accordingly.

## DISPOSITION

The probation order of March 18, 2025 is modified as follows: (1) the condition on line 6n is modified to delete the words "computers" and "recordable media"; (2) the conditions on lines 8b, 8c, and 8f are deleted and the corresponding boxes left unchecked; and (3) the "TOTAL DUE" on line 2

7

is modified from $1,260 to $740 and line 2a is left unchecked and blank.  The trial court is directed to prepare an amended probation order reflecting these modifications.  As so modified, the judgment is affirmed.


                                                              BUCHANAN, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.


8